United States Court of Appeals,

Eleventh Circuit.

No. 94-9278.

BITUMINOUS CASUALTY CORPORATION, Plaintiff-Counter-Defendant, Appellant,

v.

ADVANCED ADHESIVE TECHNOLOGY, INC., Defendant-Counter-Claimant, Appellee,

Georgia Pad, Inc., Defendant-Appellee.

Jan. 23, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 4:94-CV-010-HLM), Harold L. Murphy, Judge.

Before HATCHETT, DUBINA and BLACK, Circuit Judges.

HATCHETT, Circuit Judge:

Following Georgia law in this diversity case, we hold that a pollution exclusion provision in a commercial liability insurance policy is ambiguous and must be construed against the insurer. We affirm the district court.

## BACKGROUND

Appellee Advanced Adhesive Technology, Inc. (Advanced) manufactures and sells adhesive products. Appellant Bituminous Casualty Corporation (Bituminous) sold Advanced a general commercial liability insurance policy (GCL policy) effective from January 1, 1993, to January 1, 1994. Bituminous also issued an umbrella insurance policy to Advanced effective from July 9, 1993, to April 1, 1994.

The GCL policy contains, through an endorsement, a "POLLUTION EXCLUSION" that precludes coverage for:

(1) Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.

(2) Any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Subparagraph (1) above does not apply to bodily injury or property damage caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable, or breaks out from where it was intended to be.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The GCL policy interprets "bodily injury" to include death. The umbrella policy contains a similar pollution exclusion and defines "bodily injury" in the same manner.

On May 12, 1993, E. Lee Bazini died while allegedly installing carpet on his boat using an Advanced product, AAT-1108 Headliner and Boat Adhesive (AAT-1108). On August 30, 1993, Bazini's estate (the estate) made a claim against Advanced alleging that Bazini died from inhaling the dichloromethane fumes of AAT-1108 and that the labels on the AAT-1108 container possessed insufficient warnings as to the proper use of the product. [1] Thereafter, Advanced sought coverage from Bituminous in the form of a legal defense and indemnification. In January 1994, Bituminous filed this lawsuit in the Northern District of Georgia, seeking a declaration that the GCL policy "does not afford coverage for the Bazini claims by operation of the ... [pollution] exclusion."

[1]Bituminous's reply brief states that the estate filed a lawsuit against Advanced in January 1995. The record in this case does not contain a copy of the estate's complaint.

Advanced asserted a counterclaim contending that Bituminous "will deny coverage under the Umbrella Policy for the Bazini claim for the exact reason that [Bituminous] has denied coverage under the [GCL] policy." Both parties filed motions for summary judgment.

In an order dated October 24, 1994, the district court first concluded that AAT-1108's vapors constituted "pollutants." The court went on to hold, however, that

> (1) Plaintiff's failure to include the word "emission" within the pollution exclusion, (2) the tenuousness of the use of "discharge, dispersal, release or escape" to describe the chemical process at issue, and (3) the factual distinctions which separate this case from all others ... lead the court to conclude that the pollution exclusion, as applied in this instance, is ambiguous. The clause must, therefore, be construed against Plaintiff.

Accordingly, the court granted Advanced's motion for summary judgment, denied Bituminous's motion for summary judgment, and dismissed the case. This appeal followed.[2]

## CONTENTIONS

Bituminous contends that the pollution exclusion is unambiguous and clearly applies to permit the insurance company to deny coverage to Advanced on the estate's claim. Thus, Bituminous asserts that the district court erred in granting Advanced's motion for summary judgment and in denying its motion for summary judgment.

Advanced responds that the district court (1) properly found that ambiguity exists as to whether the pollution exclusion applies to prevent coverage on the estate's claim, and (2) correctly

---

[2]Georgia Pad, Inc. was dismissed from this action by stipulation of the parties and is not involved in this appeal.

construed that ambiguity against Bituminous.[3]

## DISCUSSION

The district court did not use extrinsic evidence in interpreting the insurance policies at issue; therefore, we review the district court using the *de novo* standard. *See United Benefit Life Ins. Co. v. United States Life Ins. Co.,* 36 F.3d 1063, 1065 (11th Cir.1994).

> In diversity cases, the choice-of-law rules of the forum state determine which state's substantive law applies. Federal jurisdiction in this case is based on diversity, and Georgia was the forum state. Under Georgia choice-of-law rules, interpretation of insurance contracts is governed by the law of the place of making. Insurance contracts are considered made at the place where the contract is delivered.

*American Family Life Assur. Co. v. United States Fire Co.,* 885 F.2d 826, 830 (11th Cir.1989) (citations omitted). The insurance contracts in this case were delivered in Georgia; thus, Georgia substantive law controls.

In Georgia, ordinary rules of contract construction govern the interpretation of insurance policies. *United States Fidelity*

---

[3]The parties also press arguments regarding the district court's treatment of coverage under the umbrella policy. Bituminous contends that the court erred in finding coverage under the policy. Advanced argues that the court failed to address the question of umbrella policy coverage, and thus the issue is not properly before this court. Both contentions are misguided. The district court's order held that the pollution exclusion does not relieve Bituminous from providing insurance coverage to Advanced in the form of a legal defense and indemnification. Restated, the court found that, notwithstanding the pollution exclusion, Bituminous must indemnify Advanced and provide the company with a legal defense. The issue the parties now raise—whether the umbrella policy applies at all to the estate's claim—only affects the *amount* Bituminous will have to indemnify Advanced when the estate receives a judgment or settlement on its claim. The record does not reveal that the estate has secured a judgment or settlement, however. Thus, the question of the applicability of the umbrella policy was not properly before the district court.

*& Guar. Co. v. Park 'N Go of Ga., Inc.,* 66 F.3d 273, 276 (11th Cir.1995) (certification to Georgia Supreme Court). "The rules of contract interpretation are statutory, and construction of a contract is a question of law for the court." *Park 'N Go,* 66 F.3d at 276; *see also* O.C.G.A. §§ 13-2-1 through 13-2-4 (1982). Moreover,

> [u]nder Georgia rules of contract interpretation, words in a contract generally bear their usual and common meaning. OCGA § 13-3-2(2). However, "if the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred." OCGA § 13-2-2(5). Georgia courts have long acknowledged that insurance policies are prepared and proposed by insurers. Thus, if an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured.

*Claussen v. Aetna Casualty & Sur. Co.,* 259 Ga. 333, 380 S.E.2d 686, 687-88 (1989). We apply these principles in assessing whether the terms "discharge," "dispersal," "release," or "escape" precisely describe the process that produced the vapors that allegedly killed Bazini.

In support of its motion for summary judgment, Advanced submitted an affidavit from its president, Benny Wood. In that affidavit, Wood attested that "[a]ll adhesive products, including AAT-1108, by their nature, emit vapors in the process of adhesion." The district court relied on this unrefuted evidence to determine that "the chemical reaction which create[d] these vapors is most accurately described by the term "emission.' " We agree with the district court's finding that the production of vapors from AAT-1108 constituted an "emission."

A "discharge" is defined as, *inter alia,* "3: the act of discharging: removal of a load: UNLOADING ... 5: a firing off:

expulsion of a charge: EXPLOSION ... 6a: a flowing or issuing out ... *EMISSION,* VENT ... b: something that is *emitted* or evacuated...." Webster's Third New International Dictionary 644 (1976) (emphasis added); *see also* Funk and Wagnalls Standard College Dictionary 378-79 (1974). Therefore, one of the definitions of "discharge" accurately describes the process in controversy; other common meanings of the word, however, do not. In *Claussen,* the Georgia Supreme Court addressed a similar situation when interpreting a pollution exclusion clause. The clause at issue there provided that the pollution exclusion did not apply when "such discharge, dispersal, release or escape is sudden and accidental." *Claussen,* 380 S.E.2d at 687. In deciding the meaning of "sudden," the court reasoned:

> What is the meaning of the word "sudden" as it is used in the insurance policy? Claussen argues that it means "unexpected"; Aetna asserts that the only possible meaning is "abrupt." ...

> The primary dictionary definition of the word is "happening without previous notice or with very brief notice; coming or occurring unexpectedly; not foreseen or prepared for." Webster's Third New International Dictionary, at 2284 (1986). *See also,* Funk and Wagnalls Standard Dictionary, at 808 (1980); Black's Law Dictionary, at 1284 (1979). The definition of the word "sudden" as "abrupt" is also recognized in several dictionaries and is common in the vernacular. Perhaps, the secondary meaning is so common in the vernacular that it is, indeed, difficult to think of "sudden" without a temporal connotation: a sudden flash, a sudden burst of speed, a sudden bang. But, on reflection one realizes that, even in its popular usage, "sudden" does not usually describe the duration of an event, but rather its unexpectedness: a sudden storm, a sudden turn in the road, sudden death. Even when used to describe the onset of an event, the word has an elastic temporal connotation that varies with expectations: Suddenly, it's spring. *See also,* Oxford English Dictionary, at 96 (1933) (giving usage examples dating back to 1340, e.g., "She heard a sudden step behind her"; and, "A sudden little river crossed my path As unexpected as a serpent comes.") *Thus, it appears that "sudden" has more than one reasonable meaning. And, under the pertinent rule of construction the*

*meaning favoring the insured must be applied,* that is, "unexpected."

*Claussen,* 380 S.E.2d at 688 (footnote omitted) (final emphasis added). Because "discharge" also has more than one reasonable meaning, we must apply the meaning favoring Advanced. As a result, we find that "discharge" does not unambiguously describe the "emission" at issue.

Moreover, none of the remaining terms of the pollution exclusion clause precisely describe the chemical process in controversy. "Dispersal" is defined as "the act or result of dispersing ... dispersion, distribution." "Release" means "the act of liberating or freeing ... discharge from restraint." "Escape" is defined as the "evasion of or deliverance from what confines, limits, or holds." Webster's Third New International Dictionary 653, 1917, 774 (1976). Under Georgia law, "[a]ny exclusion sought to be invoked by the insurer is to be liberally construed against the insurer unless it is clear and unequivocal." *Park 'N Go,* 66 F.3d at 278; *see also Alley v. Great Am. Ins. Co.,* 160 Ga.App. 597, 287 S.E.2d 613, 616 (1981) (" "[E]xclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.' ") (quoting *Krug v. Millers' Mut. Ins. Ass'n of Ill.,* 209 Kan. 111, 495 P.2d 949, 954 (1972)). Consequently, we hold that the pollution exclusion in the GCL and umbrella policies does not apply to permit Bituminous to deny

coverage to Advanced on the estate's claim.[4]

We believe this holding most accurately reflects the intention of the parties to the insurance contract. *See* O.C.G.A. § 13-2-3 (1982) ("The cardinal rule of construction is to ascertain the intention of the parties."). The pollution exclusion clearly contemplates shielding Bituminous from liabilities associated with environmental contamination. Bituminous's contrary position—that the clause excludes coverage for a consumer's claim for damages arising out of the intended use of the insured's product—is a strained one. *See Perkins Hardwood Lumber Co. v. Bituminous Casualty Corp.,* 190 Ga.App. 231, 378 S.E.2d 407, 409 (1989) (an insurance contract's "language should receive a reasonable construction and not be extended beyond what is fairly within its plain terms"); *Gulf Ins. Co. v. Mathis,* 183 Ga.App. 323, 358 S.E.2d 850, 851 (1987) ("In construing an insurance contract the test is not what the insurer intended its words to mean, but rather what a reasonable person in the insured's position would understand them to mean.").

Finally, we note that the parties submitted the drafting history of pollution exclusion clauses to support their positions in this case. "Extrinsic evidence to explain ambiguity in a contract becomes admissible only when a contract remains ambiguous after the pertinent rules of statutory construction have been applied." *Claussen,* 380 S.E.2d at 687. After applying the rules of statutory construction, as did the district court, we have

---

[4]We express no opinion as to whether the vapors at issue constitute "pollutants" under the exclusion.

resolved the ambiguity and hold that the pollution exclusion does not apply to exclude coverage to Advanced. Thus, the proposed extrinsic evidence is inadmissible.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.