IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 25, 2008

Charles R. Fulbruge III
Clerk

No. 06-10887

COLUMBIA CASUALTY COMPANY

Plaintiff - Appellee

v.

GEORGIA & FLORIDA RAILNET INC

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before KING, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

After a bench trial in a declaratory judgment action, the district court found that a railroad had no coverage under an insurance policy for a former employee's claims of injury. We affirm that decision.

BACKGROUND

The railroad that is the defendant in this suit is Georgia & Florida RailNet, Inc. ("GFR"). It purchased a policy from the plaintiff, Columbia Casualty Company. Columbia brought this declaratory judgment action to determine its obligation to GFR for claims brought by a former GFR employee in Georgia state court, though those claims had not yet been resolved. The Georgia plaintiff, Ray Shiver, had been a locomotive engineer. The claim

relevant here is that defective and poorly maintained locomotives that Shiver operated caused high levels of diesel exhaust fumes and hazardous dusts to accumulate in the locomotive cab. Shiver alleged exposure to high-enough levels of exhaust fumes as to cause severe and irreversible respiratory damage, including chronic obstructive pulmonary disease and reactive airways dysfunction. Shiver's complaint sought damages under the Federal Employers Liability Act (FELA) for "failing to provide . . . a reasonably safe place to work, safe machinery, and for its negligence in inspection, maintenance, and warning procedures," and under the Locomotive Boiler Inspection Act (LBIA), for "failing to provide [a] locomotive in a safe condition without unreasonable risk of personal injury, and for exposing [him] to hazardous levels of dust and exhaust . . . ." See 45 U.S.C.§§ 51-60 (FELA); 49 U.S.C. § 20701 (LBIA).

We will later describe the status of the state court suit.

The Columbia insurance policy

GFR has a liability policy with Columbia. It is a claims-made policy with a $50,000 self-insured retention, which is also known as a "retained limit." That provision requires GFR to pay the first $50,000 on any claim. In the section of the policy describing what is covered, Columbia states that it will "pay those sums in excess of the 'retained limit' that the insured becomes legally obligated to pay as 'damages' and to pay for related 'claim expenses' or any combination thereof because of 'bodily injury,' . . . to which this insurance applies."

The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. Bodily injury also means mental injury, mental anguish or shock sustained by that person or a relative of that person as a result of such injury." The policy defines "claims expenses" to include GFR's legal and other fees incurred to defend against claims:

all expenses incurred by [Columbia] or by the insured in the investigation, negotiation, arbitration, or defense of any "claims" for "damages", whether paid by us or by the insured including:

a.  Legal fees, investigative fees, and costs incurred by us or the insured in defense of a "claim", all costs taxed against the insured in any "claim" defended by us or the insured . . . .[and]

c.  All reasonable expenses, other than loss earnings, incurred by the insured at our request, excluding salaries or other forms of compensation paid to partners, directors or officers or other employed persons of the insured.

This explains what Columbia will pay.  The same section of the policy also specifies exclusions from coverage.  Important for us is whether FELA claims are excepted from the otherwise applicable exclusion.  In two of the three exclusions we quote below, there is an explicit exception for FELA claims.  In the third – the relevant one for injuries arising from pollutants such as diesel fumes – there is no express FELA exception.  The policy provides no coverage for

f.  Any obligation of the insured under:

(1)  A workers compensation, occupational disease, retirement, disability benefits or unemployment compensation law, any state employers liability law, unless specifically endorsed as applicable onto this policy, or any similar law except the "Federal Employers Liability Act" . . . .

g.  "Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a)  Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business . . . .

This exclusion does not apply to the liability of insured under the "Federal Employers Liability Act."

> h. (1) "Bodily injury" . . . arising out of the actual,
> alleged or threatened discharge, dispersal, seepage,
> migration, release or escape of "pollutants" . . . .

(Emphasis added).

Finally, although Columbia does not have a duty to defend as that is generally understood, the policy does have a section entitled "Duty to Defend" in which Columbia has a right to be involved in limited ways in litigation:

> At no time shall [Columbia] be called upon to assume charge of the investigation, settlement or defense of any "claims" made against the insured but we shall have the right and shall be given the opportunity to associate with the insured in the control, defense or trial of any "claims" which, in our opinion, involves or appears reasonabl[y] likely to involve this insurance. If we avail ourselves of such right and opportunity, the insured shall cooperate with us in the control, defense or trial of such "claims", so as to effect a final determination thereof. Failure on the part of any insured to so cooperate shall relieve us of liability for such "claims" and "claim expenses" arising under this policy.

## Proceedings in District Court

After receiving notice of the state suit, Columbia exercised its right to "associate" with GFR by requesting and receiving from GFR's defense counsel numerous reports, transcripts of depositions, experts' reports, legal analyses, and expense accountings.

In July 2003, GFR advised Columbia that GFR was close to exhausting its $50,000 self-insured retention limit based on legal expenses incurred defending the underlying action; additional expenses would then be paid by Columbia. In August 2003, Columbia responded that it was possible that two retained limits totaling $100,000 applied because Shiver alleged two different injuries. GFR disagreed, but in December 2004, Columbia advised GFR that it was formally taking the position that two separate self-insured retention limits applied.

About two weeks after Columbia notified GFR of its formal position, GFR's counsel sent Columbia a letter that attempted to allocate existing expenses between Shiver's inhalation claim and a separate claim, unrelated here, dealing with a head injury. Columbia had requested that information. In February 2005, Columbia responded in a letter reserving its rights and denying coverage for any of Shiver's inhalation injuries. According to Columbia, it was not responsible for any "bodily injury" arising out of exposure to diesel exhaust fumes or hazardous dust because of the exclusion applying to injuries to employees arising out of the "actual, alleged or threatened discharged, dispersal, seepage, migration, release or escape of 'pollutants.'" The parties again exchanged letters outlining their disagreement on the pollution claim coverage issue. Accordingly, GFR delayed court-ordered mediation in order to reassess its ability to settle the underlying suit.

On April 27, 2005, with the underlying suit still pending in the Georgia trial court, Columbia filed this action in federal district court for a declaratory judgment. Columbia sought a declaration that (1) it had no duty to defend GFR in the underlying suit; (2) it had no duty to indemnify for liabilities arising under the LBIA because, except for suits brought under FELA, the policy excluded liability for bodily injuries to GFR's employees arising out of the course of their employment; (3) it had no duty to indemnify GFR for Shiver's inhalation claim under FELA because of the pollution exclusion; and (4) GFR was responsible for the $50,000 "retained limit" for every covered incident. In GFR's answer, it counterclaimed that Columbia's denial of coverage for Shiver's inhalation claim constituted a breach of contract and of a duty of good faith and fair dealing. GFR also alleged that Columbia's waiting for about two years and eight months to deny coverage, while "associating" itself with GFR in the defense of the state suit the entire time, violated the Texas Insurance Code.

On June 26, 2006, with the underlying suit still pending, the district court held a one-day bench trial. The court adopted a list of uncontested issues of fact and heard testimony from the parties describing their correspondence on the underlying suit. After the close of trial, the court made oral findings on each of the contested issues of fact set forth in the parties' joint pretrial statement, which the parties had agreed were the only fact issues necessary to resolve the case. Among other findings, the district court determined that (1) Shiver's inhalation injuries were excluded from coverage under the pollution exclusion; (2) Columbia never assumed GFR's defense; (3) GFR failed to prove that Columbia did not send GFR a timely letter reserving its rights; (4) GFR was not harmed or otherwise prejudiced by the delay in Columbia's denial of coverage, even assuming that Columbia did not reserve its rights; (5) Columbia did not intentionally lead GFR to believe that the inhalation-injury claim was covered; and (6) Columbia did not make any false representations to GFR. Later, in a short order incorporating its oral findings, the district court granted Columbia declaratory relief, declaring that the inhalation-injury claim was not covered under the policy. GFR's counterclaims were denied.

GFR timely filed a notice of appeal to this court on August 17, 2006, which we later stayed until September 10, 2007. On September 24, 2006, the Georgia trial court granted GFR partial summary judgment in the underlying suit, entering judgment against Shiver on his FELA claim, which is the only claim relevant to us. Shiver filed an interlocutory appeal to the Georgia Court of Appeals on October 6, 2006. On September 24, 2007, the Georgia Court of Appeals affirmed the dismissal of Shiver's FELA claims. Shiver's petition for writ of certiorari was denied by the Georgia Supreme Court on March 31, 2008. GFR has been finally discharged from liability to its employee on the claim.[1]

---

[1] Even though the state suit between the injured employee and the railroad is over, the issue of claims expenses concerning the pollution claim must be resolved. In the policy,

DISCUSSION

GFR raises four arguments on appeal: first, the district court lacked subject matter jurisdiction to consider Columbia's claims because they were not ripe for review; second, Columbia breached the policy by refusing to cover the inhalation claims; third, the district court should have presumed that GFR was prejudiced by Columbia's delayed denial of coverage; and fourth, Columbia's belated denial amounts to a per se violation of the Texas Insurance Code.

These challenges present both factual and legal questions for this court. When a district court has conducted a bench trial, we review findings of fact for clear error, and review legal issues de novo. Gebreyesus v. F.C. Schaffer & Assocs., 204 F.3d 639, 642 (5th Cir. 2002). A district court's interpretation of an insurance contract is a question of law reviewed de novo. Am. States Ins. Co. v. Bailey, 133 F.3d 363, 369 (5th Cir. 1998).

1. Ripeness

Questions of ripeness are reviewed de novo. Staley v. Harris County, 485 F.3d 305, 308 (5th Cir. 2007). GFR argues that because at the time of the district court's ruling the underlying state court suit was still pending, the nature of Shiver's FELA claims was still capable of evolving based on the facts that came to light at trial. Moreover, Shiver might have adjusted his claim in the course of the litigation. GFR argues that any decision the district court made concerning Columbia's eventual indemnity obligations was premature as no case or controversy over those obligations would exist until after final judgment in the underlying matter.

---

Columbia is obligated to "pay those sums in excess of the 'retained limit' that the insured becomes legally obligated to pay as 'damages' and to pay for related 'claim expenses' or any combination thereof because of 'bodily injury,' . . . to which this insurance applies." We decide today whether this policy applies to this alleged bodily injury. It does not.

A federal court may not issue a declaratory judgment unless there exists an actual case or controversy. Am. States, 133 F.3d at 368. An actual case or controversy exists before the resolution of an insured's underlying suit concerning the insurer's duty to defend. See, e.g., W. Heritage Ins. Co. v. River Entm't, 998 F.2d 311, 312-13 (5th Cir. 1993). However, whereas the duty to defend is based upon the allegations in the pleadings, the duty to indemnify "is triggered by the actual facts that establish liability in the underlying lawsuit." Guar. Nat'l Ins. Co. v. Azrock Indus. Inc., 211 F.3d 239, 243 (5th Cir. 2000). Accordingly, in general an insurer's duty to indemnify cannot be determined until after the underlying suit has been resolved. See Collier v. Allstate County Mut. Ins. Co., 64 S.W.3d 54, 62 (Tex. App. 2001).

There are exceptions. The Texas Supreme Court acknowledged that there are situations in which "indemnity issues are not always nonjusticiable before liability is resolved." Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex. 1997). The Texas court had before it questions both of duty to defend and of indemnification. It announced that the "duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." Id.; see also Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 529 (5th Cir. 2004) (same). Since, in Griffin, only damages related to an "auto accident" would be covered under the policy, and no "facts can be developed in the underlying tort suit that can transform a drive-by-shooting into an 'auto accident,'" the court held – before resolution of the insured's liability suit – that the insurer did not have a duty to indemnify. 955 S.W.2d at 84. Cf. Utica Nat'l Ins. Co. v. Am. Indem. Co., 141 S.W.3d 198, 203-05 (Tex. 2004) (refusing to rule on indemnity question because it was dependant upon the factual resolution of a causation issue).

In addition, in a case in which the underlying policy did not provide for a duty to defend, a Texas appellate court found it appropriate to decide, before the underlying suit was resolved, that coverage could not possibly be available. Roman Catholic Diocese of Dallas v. Interstate Fire & Cas. Co., 133 S.W.3d 887, 890 (Tex. App. 2004) (citing Griffin). Similarly, the Columbia policy here provides for no duty to defend. The logic of Roman Catholic Diocese is convincing, that where the duty to defend is not at issue and where it is apparent before liability is resolved in the underlying case that the policy cannot cover the claim, the question of indemnity may be determined.

GFR argues that the parties' joint pretrial stipulations prevented the district court from ruling on the indemnity coverage question because the parties agreed that the question whether Shiver's injuries were caused by the inhalation of diesel exhaust fumes or hazardous dust in the course of his employment was a disputed fact in the underlying suit. This question was disputed.[2] However, the district court's conclusion that the inhalation claim was not covered under the policy reflects the understanding that any resolution of the factual question could not result in coverage under the policy. For example, if the injuries were found to be the result of locomotive exhaust fumes or hazardous dust, they would fall under the pollution exception to coverage. If the injuries were due to causes unrelated to Shiver's employment, then GFR would have no legal obligation to pay damages to Shiver. Coverage would never be available.

Accordingly, we find no error with the district court's decision to rule on the indemnity question while the underlying suit was still pending. Nor on this record is the district court's factual finding that Shiver's inhalation claims arose

---

[2] From the parties' joint pre-trial order: "The question of whether Shiver's inhalation injuries were caused by the inhalation of black rubber particulates emanating from the lining in the cab of Defendant's locomotive, or from diesel exhaust fumes or hazardous dusts, or from another different airborne substance in the cab of Defendant's locomotive, or from causes unrelated to Shiver's employment with Defendant is a disputed issue in the underlying case."

out of the alleged discharge, dispersal, migration, release, or escape of pollutants clearly erroneous.

2. Inhalation claims

We now turn to the legal question of the district court's interpretation of the policy. The district court held that Columbia had no obligation to cover the inhalation claims under the policy, necessarily rejecting GFR's counterclaim for breach of contract.

GFR argues that the inhalation claim should be covered by the policy because Exclusions (f) and (g) of the policy grant coverage for FELA claims. It is undisputed that Shiver's inhalation-injury claim was under FELA. According to GFR, the policy recognizes at least two "arising out of" situations that implicate coverage: (1) cases where liability under the FELA is due to an employee's "bodily injury" arising out of his employment with GFR, which is covered under Exclusions (f) and (g); and (2) cases where liability is due to an employee's "bodily injury" arising out of the release of "pollutants," which is excluded from coverage under Exclusion (h). GFR asserts that under Texas's broad interpretation of the phrase "arising out of," Shiver's FELA injuries are rightly understood as both "arising out of" his employment with GFR (which would be covered) and "arising out of" the release of pollutants (which would not be covered). Under these circumstances, the pollution exclusion should not preclude coverage because Texas law counsels that exclusionary language should be read narrowly, and that language that is susceptible to two or more constructions must be construed against the insurer. In GFR's words, "the inclusion trumps the exclusion." We shall evaluate that pithy point.

As a preliminary matter, the term "inclusion" is a misnomer. GFR wrongly equates an exception to an exclusion to an affirmation of coverage. The policy's coverage is bound here by the insuring clause, which limits payment to claims "to which this insurance applies." An exclusion subtracts from coverage,

i.e., any exception to it is no longer specifically exempt from coverage. Yet nothing gives the exception the affirmative status of being covered by the policy. T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co., 784 S.W.2d 692, 699 (Tex. App. 1989) (because exclusion does not extend or grant coverage, exception to it "merely removes [the excepted situation described] from the specific exclusion relating to contractual liability"). We have held that an exclusion cannot create coverage that would not otherwise exist under a policy. United Nat'l Ins. Co. v. Hydro Tank, Inc., 497 F.3d 445, 452-53 (5th Cir. 2007)

Moreover, GFR's interpretation would require us to cast aside several established principles governing interpretation of the provisions of insurance policies under Texas law. While it is the case that exceptions and limitations in an insurance policy are strictly construed against the insurer, each part of the contract must also be given effect and meaning. See Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co., 99 F.3d 695, 700-01 (5th Cir. 1996); see also Hydro Tank, Inc., 497 F.3d at 452 ("[E]ach policy provision is, to the greatest extent possible, to be given independent significance and effect"). An interpretation that gives a reasonable meaning to all provisions is preferable to one that leaves a portion of the policy useless, inexplicable, or creates surplusage. Liberty Mut. Ins. Co. v. Am. Employers Ins. Co., 556 S.W.2d 242, 245 (Tex. 1977). The purpose of an exclusion is to take something out of the coverage that would otherwise have been included in it. Id.

GFR implicitly accepts that the inhalation claim fits within the terms of the pollution exclusion. GFR urges that the exclusion nonetheless does not apply because the claim falls within the exception of two other exclusions. We disagree, because GFR's position in effect eliminates the pollution exclusion and breaks the bounds of a reasonable construction of the policy's terms. When "policy terms are susceptible of only one reasonable construction, they will be enforced as written." See Guar. Nat'l, 211 F.3d at 243.

11

A reasonable construction analysis starts with the text of the pollution exclusion – Exclusion (h). It eliminates coverage for bodily injury "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' . . . ." GFR would have this court add an exception to that exclusion for claims brought under the FELA, simply because two other exclusions have FELA exceptions. We conclude just the opposite. If FELA claims were meant to be excepted from the exclusion, the drafters of the policy showed a recurring ability to write such an exception. GFR presents no reason why other exclusions should be affected by the two which contain the FELA exception. Accord Hydro Tank, Inc., 497 F.3d at 452 (a single exception to an exclusion cannot "impliedly neutralize" all other specific exclusions to coverage); Lumbermens, 784 S.W.2d at 699 (exception to a contractual liability exclusion does not negate other policy exclusions; exception remains subject to and limited by all other relevant exclusions). Accordingly, the district court was correct in finding the inhalation claim not covered by the policy.

3. Presumption of prejudice

In its next challenge, GFR argues that the district court should have presumed that GFR was prejudiced by Columbia's delayed denial of coverage. It is not clear whether GFR argues this point in support of its claim that Columbia was estopped from rejecting coverage of the inhalation claim, or its claim that Columbia breached its duty of good faith and fair dealing. Regardless, GFR's argument must be rejected.

First, GFR bases its argument on the "undisputed" fact that "Columbia first denied indemnity coverage and reserved its rights almost three years after notice of the underlying FELA suit." This is simply not the case. The timing of Columbia's reservation of rights was disputed, and the district court found that GFR failed to prove that a reservation-of-rights letter was not sent well before its eventual denial. Besides its bare assertion above, GFR neither challenges

this factual finding, nor disputes the district court's legal conclusion that it carried the burden of proof.

Second, prejudice aside, GFR fails to establish the other requirements for its estoppel and bad faith claims. For GFR to succeed with regard to estoppel in this context, it must show that despite sufficient knowledge of facts indicating non-coverage, Columbia "assumed or continued to defend its insured without obtaining an effective reservation of rights or non-waiver agreement." See Pa. Nat'l Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc., 964 F.2d 478, 481 (5th Cir. 1992). But Columbia never assumed any defense of GFR, and the district court noted evidence – not disputed here – that a reservation-of-rights letter was sent at the outset. For GFR to succeed with regard to its good faith and fair dealing claim it must show, inter alia, that "there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy." Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 340 (Tex. 1995). As explained in the previous section, Columbia's denial was justified.

4. Violation of Texas statute

Finally, GFR alleges that Columbia violated Section 541.060 of the Texas Insurance Code. GFR again wishes us to disregard the district court's factual finding that there was insufficient evidence to show that a reservation-of-rights letter had not been sent; it asserts that Columbia knowingly failed either to reserve its rights or to deny coverage within a reasonable time. We have already sustained the finding as to the reservation-of-rights issue. The only remaining issue is whether the timing of Columbia's denial was unacceptable.

Under Texas law, an insurance company engages in an "unfair method of competition or an unfair or deceptive act" if it "fail[s] within a reasonable time to . . . affirm or deny coverage of a claim to a policy holder." Tex. Ins. Code Ann. § 541.060(a)(4). As a consequence of the duty to indemnify being based on facts proven, not on the pleadings, the insurer "must decide the issue of coverage

within a reasonable time after judgment or settlement." Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co., 130 S.W.3d 181, 190 (Tex. App. 2003) (interpreting repealed version of the Code's requirement to deny coverage "within a reasonable time"). Because the court proceedings in the underlying case had not yet started as of Columbia's February 2005 letter denying coverage of the inhalation claim, the district court did not err in finding against GFR.

## CONCLUSION

GFR has failed to show reversible error. The judgment of the district court is AFFIRMED.