**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 01-20201
_____

CONSUMERS COUNTY MUTUAL INSURANCE CO,

Plaintiff-Counter Defendant-Appellee,

versus

PW & SONS TRUCKING INC,

Defendant-Counter Claimant-Appellant.

FRED PAILLET, IV

Defendant-Appellant

Appeals from the United States District Court
For the Southern District of Texas

October 8, 2002

Before EMILIO M. GARZA, BENAVIDES, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

P.W. & Sons Trucking, Inc. (PWS) and Fred Paillet IV appeal the district court's grant of

summary judgment in favor of Consumers County Mutual Insurance Co. ("Consumers") in this

declaratory judgment action. Specifically, PWS and Paillet contend that the district court erred when it relied on a Department of Transportation regulation, 49 C.F.R. § 390.5, to determine whether Paillet was an "employee" excluded from coverage under PWS's commercial auto insurance policy. Because we believe the district court properly relied on the regulation, we affirm.

In February of 1998, PWS, a small trucking company, hired two drivers to assist in hauling four loads of plastic resin from Texas to various locations in Louisiana, Arkansas, Missouri, and New York. The drivers, Paillet and Terry Wayne Bob, both held other jobs at the time and worked for PWS on a load-by-load basis. Although there is evidence in the record that Paillet hauled loads for PWS with some frequency, he was not regularly employed by PWS, nor was he obligated to haul future loads after he completed a given trip. PWS paid Paillet on a percentage-of-the-load basis.

Paillet and Bob delivered the four loads of plastic resin to their destinations without incident. On their return trip back to Texas, however, Paillet and Bob were involved in a one-vehicle accident in Virginia. At the time of the accident, Bob was driving the tractor-trailer and Paillet was asleep in the truck's sleeper bunk. Bob died at the scene of the accident. Paillet sustained serious injuries and remained in a coma for more than two months. Paillet later filed suit against PWS to recover for his injuries. PWS notified Consumers of the lawsuit and requested a defense and indemnity under its commercial auto insurance policy.

Thereafter, Consumers filed a declaratory judgment action in federal district court based on the policy's exclusions relating to liability for injuries to employees. In its complaint, Consumers conceded that, at the time of the accident, Paillet and Bob were driving a tractor-trailer covered by PWS's policy with Consumers, and that the injuries caused by the accident fell within the policy's

general liability coverage.[1] Consumers argued only that, because Paillet was an "employee" of PWS, his injuries were excluded from coverage by one of the policy's employee exclusions.[2] In response, PWS argued that the employee exclusions were not applicable to Paillet's case because Paillet was not actually an employee of PWS, but rather an independent contractor. To support its argument, PWS relied on the traditional Texas common law distinction between employees and independent contractors.[3]

---

[1]By the terms of PWS's policy with Consumers, Consumers agreed to indemnify PWS and to defend PWS in any lawsuits for damages for "**bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership; maintenance or use of a covered **auto**."

[2]The policy at issue in this case includes standard employee exclusions. Specifically, the policy excludes coverage for the following employee injuries:

4.      EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY

**Bodily Injury** to:

a.      An employee of the **insured** arising out of and in the course of employment by the **insured**; . . .

5.      FELLOW EMPLOYEE

**Bodily injury** to any fellow employee of the **insured** arising out of and in the course of the fellow employee's employment.

The policy does not define the term employee.

[3]Under Texas common law, "[t]he test to determine whether a worker is an employee or an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the employee's work." *Thompson v. Travelers Indem. Co. of R.I.*, 789 S.W.2d 277, 278 (Tex. 1990). For an individual to be considered an employee, "[t]he employer must control not merely the end sought to be accomplished, but also the means and details of its accomplishment as well." *Id.* In contrast, an independent contractor is an individual who, "[i]n the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control and all its details." *William Sommerville & Sons, Inc. v. Carter*, 571 S.W.2d 953, 956 (Tex. Civ. App.–Tyler 1978), *aff'd on*

After both Consumers and PWS filed summary judgment motions, the district court held that the policy's exclusions applied to preclude coverage in this case because Paillet was a "statutory employee" of PWS. In reaching its decision, the court relied on § 390.5 of the Department of Transportation regulations, which provides definitions for several terms appearing in those regulations. Section 390.5 defines an "employee" as:

> any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (*including an independent contractor while in the course of operating a commercial motor vehicle*), a mechanic, and a freight handler.

49 C.F.R. § 390.5 (emphasis added). Because § 390.5 eliminates the traditional common law distinction between employees and independent contractors for drivers like Paillet, the district court determined that no genuine issues of material fact existed warranting trial in this case. The court then granted summary judgment in favor of Consumers on the basis of the policy's employee exclusions. PWS and Paillet now appeal.

We review a district court's grant of summary judgment de novo. *McClendon v. City of Columbia*, 258 F.3d 432, 435 (5th Cir. 2001). The district court's interpretation of an insurance contract is a question of law that we also review de novo. *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998); *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins.*, 99 F.3d 695, 700 (5th Cir. 1996). We will affirm a district court's grant of summary judgment when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P.

_____

*other grounds*, 584 S.W.2d 274 (Tex. 1979).

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

The principal issue in this appeal is whether the district court properly relied on § 390.5 to determine whether Paillet was an employee of PWS under the policy. Both parties contend that the term employee as it is used in the policy is clear and unambiguous. Each, however, presents a different plain meaning of that term. According to Consumers, in light of the policy's purpose and the special significance of § 390.5 in the trucking industry, the parties clearly intended the federal definition to control. In contrast, PWS contends that the parties intended the traditional common law definition of the term. Although PWS acknowledges the federal definition stated in § 390.5, PWS argues that we cannot rely on § 390.5 absent an express incorporation of that definition in the terms of the policy.

Texas rules of contract interpretation control in this diversity case. *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). Under Texas law, when faced with a coverage dispute, our primary concern is to give effect to the intentions of the parties as expressed by the policy language. *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983). We give the terms used in the policy their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). When interpreting an insurance policy, however, we cannot simply consider its terms in the abstract. Rather, we must "consider the policy as a whole and interpret it to fulfill [the] reasonable expectations of the parties in light of customs and usages of the industry." *N. Am. Shipbuilding, Inc. v. S. Marine & Aviation Underwriting, Inc.*, 930 S.W.2d 829, 834 (Tex. Civ. App.–Houston [1st Dist.] 1996, n.w.h.).

The policy at issue in this case is a public-liability policy designed specifically for use by motor

carriers in the interstate trucking industry. Federal law requires motor carriers to procure at least a minimum level of public-liability insurance in order to obtain an operating permit. *See* Motor Carrier Safety Act of 1984, 49 U.S.C. § 13906 (2000); 49 C.F.R. § 387.1 *et seq.* The purpose of this insurance requirement is to ensure that a financially responsible party will be available to compensate members of the public injured in a collision with a commercial motor vehicle. Although the Motor Carrier Safety Act places an affirmative insurance obligation on motor carriers with respect to the public, it does not require motor carriers to obtain coverage for "injury to or death of [their] employees while engaged in the course of their employment." 49 C.F.R. § 387.15.

There is no question that PWS's policy with Consumers was drafted to comply with federal insurance requirements. As a result, these requirements must inform our interpretation of the policy's terms. Section 390.5, which was enacted pursuant to authority granted by the Motor Carrier Safety Act, is central to this federal regulatory scheme.[4] By eliminating the common law employee/independent contractor distinction, the definition serves to discourage motor carriers from using the independent contractor relationship to avoid liability exposure at the expense of the public. In light of the clear intention of the parties to comply with federal regulations and the broad application of § 390.5 throughout those regulations, it is reasonable to conclude that the parties intended § 390.5 to supply the definition of the term employee in the policy.

Nevertheless, PWS asks us to ignore the federal definition of employee in favor of the common law definition of the term. PWS argues that we should not apply § 390.5 because the policy behind this regulation, and the Motor Carrier Safety Act generally, has no application in this case.

___

[4]Section 390.5 provides the only definition of the term "employee" used in the federal motor carrier safety regulations, a subchapter of the Department of Transportation regulations. *See* 49 C.F.R. §§ 350-399.

Specifically, PWS notes that one purpose of § 390.5 is to discourage trucking companies from using the independent contractor status to manipulate their liability exposure with respect to the public. *See, e.g., id.* at § 387.1 (stating that the purpose of federal motor carrier regulations generally is "to assure that motor carriers maintain an appropriate level of financial responsibility for motor vehicles operated on public highways"). Based on the stated purpose of the Motor Carrier Safety Act and its regulations, PWS suggests that the definition of employee found in § 390.5 only applies to eliminate the "independent contractor defense" when motor carriers are sued by members of the public for the negligent acts of their drivers. When the issue is whether a driver is an employee for purposes of whether insurance coverage excludes the driver's own injuries, PWS contends that § 390.5 should yield to the traditional common law definition of employee.[5]

We are not persuaded that the term "employee" should be given different meanings under an insurance policy depending on the context in which it is used.[6] Rather, we must interpret a policy's terms in view of the policy as a whole and its overall purpose. *Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 274 (Tex. Civ. App.—Houston [1st Dist.] 2001, no pet. h.) ("[W]e construe the terms of the policy as a whole, and consider all of its terms, not in isolation, but within the context of the policy."). An example illustrates the problem with PWS's construction: In a case involving a collision between a negligent driver and an innocent third party, the driver would be considered an

---

[5]To support its position, PWS relies on several Fifth Circuit cases evaluating the effect of federal regulations on disputes between multiple insurers regarding whose insurance is primary. None of these cases address the interpretation of an employee exclusion in a public-liability policy or the use of federal definitions to construe a policy's terms. As a result, they are simply not on point.

[6]Here, the term employee is used not only in the policy's employee exclusions, but also in its definition of who is an insured. When used in the latter context, § 390.5 serves to broaden coverage for injuries to the public caused by common law independent contractors.

employee for purposes of coverage for a third-party's injuries. The driver would be an independent contractor, however, to determine whether the employee exclusions preclude coverage for his injuries. Absent some indication in the policy, we cannot assume that the parties intended such a result.[7]

In the alternative, PWS argues that the term employee in the insurance policy is at least ambiguous. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) (stating that a contract is ambiguous if it is subject to two or more reasonable interpretations). As a result, PWS contends that we should interpret it against the insurer, Consumers, and apply the Texas common law definition. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991) ("Ambiguous insurance contracts are interpreted against the insurer."). Because we believe the term employee is not ambiguous, but clearly refers to employees within the meaning of § 390.5, this argument is without merit.

In sum, we conclude that the district court properly relied on § 390.5 to determine that Paillet

---

[7]We also note that the Ninth Circuit has rejected a similar "context-specific" approach to § 390.5 in *Perry v. Harco Nat'l Ins. Co.*, 129 F.3d 1072 (9th Cir. 1997). The issue in *Perry* was whether a truck driver, who was clearly an independent contractor at common law, was an "employee" excluded from coverage by the policy's MCS-90 Endorsement. *Id.* at 1073. The endorsement explicitly excluded from coverage liability resulting from "injury to or death of the insured's employees while engaged in the course of their employment." Because the MCS-90 is a federally-mandated endorsement whose terms are specified by federal regulation, the federal definition set forth in § 390.5 clearly applied. *See* 49 C.F.R. § 387.15 (creating form endorsements, including the MCS-90, to be attached to a motor carrier's liability policy). Nonetheless, the plaintiff argued that the court should decline to rely on § 390.5 to interpret the term "employee" in the endorsement's exclusion because doing so would not serve the purposes of the Motor Carrier Safety Act and its regulations. *Id.* at 1074. The Ninth Circuit rejected the plaintiff's argument, holding instead that the definition set forth in § 390.5 applied generally throughout the regulations regardless of whether its application directly promoted a regulatory goal. *Id.* at 1074-75; *see also* 49 C.F.R. § 390.5 (stating that, unless specifically defined elsewhere, the definition of "employee" applies throughout the entire subchapter).

was an employee of PWS for purposes of the policy's employee exclusions. Because Paillet is an employee under § 390.5 regardless of whether he would have been considered an employee or an independent contractor at common law, the policy's employee exclusions apply to preclude coverage in this case.[8]  Therefore, the district court's grant of summary judgment to Consumers is AFFIRMED.

---

[8]PWS suggests that Paillet was not an employee under § 390.5 because he was not injured "while in the course of his employment."  Specifically, PWS suggests that, because it was Paillet's turn to rest and Bob's turn to drive at the time of the accident, he was not acting "in the course of his employment."  This argument is squarely foreclosed by precedent. *See White*, 599 F.2d at 53.