# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 12, 2009

Charles R. Fulbruge III
Clerk

No. 08-10381

OOIDA RISK RETENTION GROUP, INC

Plaintiff-Appellant

v.

DERRICK SHAMOYNE WILLIAMS

Defendant

v.

EDITH KNIGHTON, as next friend of B L W a minor child; TERRA MOSES-WHITE, as next friend of B L W a minor child; N'GAI BROWNING, as next friend of T M Jr a minor child

Intervenors-Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, BARKSDALE, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge.

This appeal arises out of litigation pertaining to a single-vehicle accident that killed Tony Moses ("Moses"). Moses was the sole proprietor of Slim Shady Express and a commercial motor carrier. At the time of the accident that killed Moses, Moses' tractor-trailer was being driven by Derrick Shamoyne Williams.

Ooida Risk Retention Group, Inc., Moses' insurer, brought an action in federal district court to obtain a declaration that it owed no duty to defend or indemnify Williams in any underlying negligence suit against Williams. Moses' family ("Intervenors") intervened in the federal action, and the district court granted summary judgment to Intervenors. Ooida contends on appeal that the district court erred in finding that no exclusion applied to deny coverage under Moses' insurance policy. Because we find that Moses and Williams are statutory "employees" under the Motor Carrier Safety Act, and that the "Fellow Employee" exclusion thus applies to deny coverage, we reverse the district court and render summary judgment in favor of Ooida.

I

Ooida issued a standard Commercial Motor Carrier Policy (the "Policy") to Slim Shady Express, a federally regulated interstate motor carrier under the Motor Carrier Safety Act. The Policy provided $1 million in liability coverage for tractor-trailer rigs owned and operated by Moses.

At the time of the accident, Williams was driving the tractor-trailer rig on an interstate in Florida. Williams lost control of the rig, causing it to overturn and roll down an embankment. Moses, who was occupying the rig's sleeper berth, was crushed and killed. Moses' family members filed a negligence suit in state court against Williams. Ooida provided a defense to Williams under a reservation of rights.

Ooida subsequently filed a declaratory judgment action in federal district court, seeking a judicial declaration that it owed no duty under the Policy to defend or indemnify Williams in the underlying negligence suit. Moses' family successfully intervened, and the parties filed cross motions for summary judgment. The district court denied Ooida's motion and granted Intervenors' motion for summary judgment, holding that Ooida had a duty to defend Williams in the underlying suit. The court found that Williams was an "insured"

under the Policy, and that the "Employee Indemnification" and "Fellow Employee" exclusions contained in the Policy did not operate to preclude coverage, as the court could not determine whether Williams was an "employee" of Moses. The district court also found that the "occupant hazard endorsement" was void because it conflicted with Texas's statutory requirements for minimum liability insurance. The court concluded that the Ooida's liability was the full policy limit of $1,000,000. Ooida timely appealed.

## II

We review the grant of a motion for summary judgment *de novo,* applying the same standards as the district court. *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009). The insurer's duty to defend is a question of law that is also reviewed *de novo.* *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 599 (5th Cir. 2006). Summary judgment is proper when, viewing the evidence in light most favorable to the non-moving party, the record reflects that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

As the parties agree, Texas law governs this insurance dispute. In Texas, the insurer's duty to defend is governed by the "eight corners rule," which holds that the duty to defend is determined solely from the terms of the policy and the pleadings of the third-party claimant. *JHP Dev., Inc.*, 557 F.3d at 212 (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006)). Only these two documents are ordinarily relevant to the duty-to-defend inquiry. *Graham*, 473 F.3d at 599-600. "[A] plaintiff's factual allegations that potentially support a covered claim are all that is needed" to invoke the duty to defend; the duty to defend does not rely on the truth or falsity of the allegations. *JHP Dev., Inc.*, 557 F.3d at 212 (citing *GuideOne*, 197 S.W.3d at 310). If the underlying pleading alleges facts that may fall within the scope of coverage, the insurer has a duty to defend; if, on the other hand, the pleading only alleges

3

facts excluded by the policy, there is no duty to defend. *Northfield Ins. Co. v. Loving Home Care, Inc.,* 363 F.3d 523, 528 (5th Cir. 2004).

While the duty to defend depends on the allegations in the pleadings, the "duty to indemnify is triggered by the actual facts that establish liability in the underlying lawsuit." *Columbia Cas. Co. v. Ga. & Fa. RailNet, Inc.,* 542 F.3d 106, 111 (5th Cir. 2008)(internal quotation marks and citations omitted). Accordingly, an insurer's duty to defend and duty to indemnify are distinct, as in general the underlying suit must be resolved in order to determine the latter. *Id.*

## III

Ooida argues that several policy exclusions apply to deny coverage and thus to foreclose its duty to defend.

## A

As an initial matter, the parties' arguments rely on differing assumptions about who is the "insured" under the plan. Ooida contends that the "insured" is Slim Shady Express, and that Moses is thus an "employee" of the named insured. Intervenors, however, argue that Williams, as the party against whom the claim is asserted, is the "insured." We must thus first look to the relevant policy provisions to determine who is the "insured" party for purposes of coverage.

Under "Who is an insured," the Policy states:

The following are "insureds":
a. You for any covered "auto".
b. Anyone else while using with your permission a covered "auto" you own, hire or borrow. . .

The Policy's definition of "insured" also contains a clause that states that "coverage applies separately to each insured seeking coverage or against whom a claim or suit is brought." In *Commercial Standard Insurance Co. v. American*

*General Insurance Co.*, 455 S.W.2d 714 (Tex. 1970), the Texas Supreme Court addressed a similar "severability of interests" clause providing that the term "the insured" was used severally in the insurance contract.[1]  The court held that:

> 'The insured' does not refer to all insureds; rather, the term is used to refer to each insured as a separate and distinct individual apart from any and every other person who may be entitled to coverage thereunder. When a claim is made against one who is an 'insured' under the policy, the latter is 'the insured,' for the purpose of determining the company's obligations with respect to such claim.

*Id.* at 721. The court thus found that the term "the insured" in the exclusions referred to the specific individual seeking coverage, not all insureds collectively.  The severability of interests clause in the policy issued by Ooida accomplishes the same result as that discussed in *Commercial Standard*, giving effect to the separate coverage promised each insured by using the term "the insured" to refer to the particular insured seeking coverage.  *See also King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 188 (Tex. 2002)(finding that "separation of insureds" provision required claim to be viewed from standpoint of particular insured against whom injured party's claim is made, and analyzing issue as though party sued were sole insured.)

Intervenors are thus correct that, given the "severability of interests" or "separation of insureds" clause in the policy, we must treat the "insured" as the party against whom the claim is asserted—in this case, Williams, as the permissive driver of the truck.  Contrary to Ooida's contention that establishing Williams as the permissive driver of Moses' truck requires us to look outside the eight corners of the pleadings, we may safely infer Williams' status from the allegations in the complaint that Williams was driving the truck while Moses

---

[1] The clause in *Commercial Standard* read: "The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limit of the company's liability." *Commercial Standard,* 455 F.3d at 721.

was asleep in the sleeping cab. See *Graham*, 473 F.3d at 601 (considering "any reasonable inferences that flow from the facts alleged" in the underlying complaint.)

Keeping in mind that Williams, not Moses or Slim Shady Express, is the policy's "insured," we now turn to the applicability of the exclusions.

B

We turn to the "Fellow Employee Exclusion" of the policy, which excludes coverage for:

> "Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

The application of the "separation of insureds" clause renders Williams, not Moses, the "insured" for purposes of coverage. Because Moses is the party to whom "bodily injury" occurred, in order for the Fellow Employee Exclusion to apply, we must find both Williams and Moses to be statutory "employees."

The Motor Carrier Safety Act and its attendant regulations govern the meaning of terms under insurance policies designed to comply with federal requirements for motor carriers. *See Consumers County Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 366 (5th Cir. 2002). 49 C.F.R. § 390.5, enacted pursuant to the authority of the Motor Carrier Safety Act, defines "employee" as:

> [A]ny individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler.

49 C.F.R. § 390.5 (2009). "Employer" is defined as:

[A]ny person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it, but such terms does not include the United States, any State, any political subdivision of a State, or an agency established under a compact between States approved by the Congress of the United States. . . .

*Id.*

The district court, in addressing the issue of Williams' employment status in the context of applying the Fellow Employee Exclusion, focused on the "employed by an employer" language of Section 390.5's definition of "employee." It held that the dispositive question was not whether Williams was operating the vehicle at the time of the accident, but whether he was *actually employed* by Moses. Because evidence pertaining to Williams' employment relationship with Moses fell outside the eight corners of the pleadings and policy, the lower court held, it could not find Williams to be a statutory employee.

The district court erred. The complaint sets out the facts that establish that Williams was, at a minimum, an independent contractor. Intervenors alleged that "Moses occasionally asked Defendant to help him on long-haul jobs, and he paid Defendant for his help. . . ." This description fits squarely within that of an independent contractor. Indeed, the facts as alleged by Intervenors are scarcely distinguishable from those in *Consumers County*, in which the driver of the vehicle was employed on a load-by-load basis by the insured trucking company. *See Consumers County*, 307 F.3d at 363-64. As an independent contractor, Williams qualifies as a statutory "employee" under § 390.5. *Id.* at 367, *see also Perry v. Harco Nat'l Ins. Co.*, 129 F.3d 1072, 1074-75 (9th Cir. 1997)(holding MCS-90 Endorsement inapplicable with respect to driver who was independent contractor for insured trucking company.)

The question of Moses' status as an "employee" under federal law is more difficult. Intervenors focus on the "other than an employer" language in Section

390.5 to argue that the definition of "employee" cannot apply to Moses, while Ooida looks to the language defining "employee" as any "driver of a commercial motor vehicle." Ooida contends that, notwithstanding the first sentence in the definition of "employee," a driver operating a vehicle owned by a motor carrier is *per se* an "employee" under the regulation even if he is himself the motor carrier.

The language of the Motor Carrier Safety Act resolves the question. It defines "employee" as:

> [A]n operator of a commercial motor vehicle (including an independent contractor when operating a commercial motor vehicle), a mechanic, a freight handler, *or* an individual not an employer, who---
>> (A) directly affects commercial motor vehicle safety in the course of employment; and
>> (B) is not an employee of the United States Government, a State, or a political subdivision of a State. . . .

49 U.S.C. § 31132(2)(Emphasis added). The disjunctive use of "or" creates a distinction between an "operator of a commercial motor vehicle" and a non-employer individual who directly affects commercial motor vehicle safety in the course of employment, strongly suggesting that the statutory definition of "employee" is broad enough to include owner-operators such as Moses, while in the course of driving a commercial motor vehicle. We apply the statutory definition of employee in this instance, as any inconsistency between the statutory language and the language contained in the regulations must be resolved in favor of the statute.[2] *See Brown v. Gardner*, 513 U.S. 115, 122

---

[2] Intervenors argue that treating Moses simultaneously as an "employee" and an "employer" under the regulations runs afoul of the principle that the term "employee" should not "be given different meanings under an insurance policy depending on the context in which it is used." *Consumers County*, 307 F.3d at 366. In *Consumers County* we declined to adopt the Texas common law definition of "employee" over the federal definition in interpreting an insurance policy also governed by the Motor Carrier Safety Act. We held there that Section 390.5 eliminates the traditional common law distinction between employees and independent contractors, and that the latter thus fell under 390.5's definition of "employee." *Id*. It does not

(1994)(finding "no antidote" to regulation's inconsistency with the statute); *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1047 (5th Cir. 1973)(terms as used in the regulation "must be construed in light of the statute which that regulation implements.")

Having established that a sole proprietor operating a motor vehicle can be an "employee" under the federal motor carrier regulations, we turn to whether Moses was driving in tandem with Williams in this case, and thus also operating the motor vehicle. *See Consumers County*, 307 F.3d at 367 n.8 (finding that tandem driver was "employee" under Section 390.5 despite fact that he was not driving at time of accident.) The underlying complaint does not establish Moses' role in the truck at the time of the accident; thus, determination of his status as tandem driver requires consideration of evidence outside the eight corners of the complaint and the Policy. The district court inquired into whether Williams qualified as a statutory "employee" under the statute, but applied a strict "eight corners" approach in doing so. *Ooida Risk Ret. Grp., Inc. v. Williams*, 544 F.Supp.2d 540, 545 (N.D.Tex. March 25, 2008)(citing to *Nat'l Union Fire Ins. Co. v. Merch. Fast Motor Lines.*, 939 S.W.2d 139, 141 (Tex. 1997)). Ooida urges us to examine the extrinsic evidence under an exception to the eight corners rule recognized by some Texas appellate courts. *See, e.g., Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*, 16 S.W.3d 418, 421 (Tex. App.-Waco 2000, *pet. denied*); *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452-53 (Tex. App.-Corpus Christi 1992, *writ denied*); *Gonzales v. Am. States Ins. Co.*, 628 S.W.2d 184, 187 (Tex. App.-Corpus Christi 1982, *no writ*).

---

conflict with our holding in *Consumers County* to find that the federal definition of the term "employee" also includes owner-operators who are motor carriers if they are driving their own commercial motor vehicles. Other federal motor carrier safety regulations clearly cover owner-operators such as Moses. Section 391.1(b), for example, provides that a motor carrier "who employs himself. . . as a driver" must comply with the rules that apply to motor carriers as well as the rules that apply to drivers. 49 C.F.R. § 391.1(b). *See also* 49 C.F.R. 390.11 ("[i]f the motor carrier is a driver, the driver shall likewise be bound" to driver regulations).

In *Northfield Ins. Co.*, this Court made an "*Erie* guess" that the Texas Supreme Court would not recognize any exception to the eight corners rule. However, the Court also stated that, were the Supreme Court of Texas to recognize an exception, it would be limited to cases where "it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield*, 363 F.3d at 531. In *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308-09 (Tex. 2006), the Supreme Court of Texas cited this language from *Northfield* with approval, though it held that the circumstances of the case before it did not meet the conditions of the exception. The district court rejected Ooida's arguments that *Northfield* and *GuideOne* support the application of an exception to the eight corners rule to the determination of coverage here.

We find that *GuideOne* supports our "*Erie* guess" that the limited conditions of an exception to the eight corners rule exists here. The facts at hand fit comfortably within the narrow language contained in *Northfield*: readily ascertainable facts, relevant to coverage, that do not "not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield*, 363 F.3d at 531. The fact relevant to whether Moses is an "employee" under Section 390.5—whether he was tandem-driving with Williams, and thus "operating a commercial motor vehicle"—does not implicate Williams' negligence in the underlying suit, does not contradict any of the allegations in the pleadings, and controls the question of policy coverage. *See, e.g., W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 314-15 (5th Cir. 1993)(holding that applicability of policy exclusion for service of alcohol to an intoxicated person was necessary to determine initial question of coverage, and thus considering evidence extrinsic to the pleadings and policy). Because the pleadings do not

10

contain the facts necessary to resolve the question, we hold that the exception employed by *Northfield* applies and that extrinsic evidence can be considered.

It is clear from the record that Moses was tandem driving with Williams on the night the accident occurred. In Williams' deposition, he states that Moses "started the job [of driving the truck to Florida] and pick[ed] [Williams] up along the way," and that Williams joined him in Garland. The allegations contained in the Intervenors' complaint against Williams do not contradict this testimony.[3] We therefore hold that Moses is a statutory "employee" under Section 390.5 and the Fellow Employee exclusion applies to negate Ooida's duty to defend in the underlying suit.[4] Because we find that the Fellow Employee Exclusion operates to deny coverage, we do not address the applicability of the Employee Indemnification or Workers Compensation Exclusions.

## C

Because a policy exclusion precludes Ooida's duty to defend, it is unnecessary to resolve Ooida's arguments with respect to the application of the Occupant Hazard Exclusion. However, even though we hold that Ooida has no duty to defend, we must still address the separate question of Ooida's potential duty to indemnify Williams pursuant to the MCS-90 Endorsement contained in the policy.[5]

---

[3] Intervenors' complaint states: "Tony Moses was killed while riding as a passenger in a tractor-trailer rig owned by him and operated by Defendant, his friend and sometime helper. Moses occasionally asked Defendant to help him on long-haul jobs, and he paid Defendant for his help, but Defendant was not Tony Moses' employee."

[4] Intervenors additionally contend that the "Individual Named Insured Endorsement" negates the Fellow Employee Exclusion. The Endorsement reads: "The FELLOW EMPLOYEE Exclusion does not apply to "bodily injury" to your or a "family member's" fellow employees." The exclusion clearly applies to injuries sustained by the "fellow employees" of the *named insured*, Moses. Because here, the injuries were sustained by Moses, not Williams as a fellow employee, this endorsement does not abrogate the Fellow Employee exclusion.

[5] The district court did not address this question because it did not find that any of the policy exclusions applied. *Ooida Risk Ret.*, 544 F.Supp.2d at 547.

11

As previously discussed, the duty to indemnify is distinct from the duty to defend; the former is determined by all the facts and circumstances that result in the insured's potential liability. *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex. 1997).

The policy's MCS-90 Endorsement, which is required by federal law, reads:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against *the insured* for *public liability resulting from negligence in the operation, maintenance or use of motor vehicles* subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. *Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo.* It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency of bankruptcy of the insured. However, all terms, conditions, limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under provisions of the policy except for the agreement contained in this endorsement.

(Emphasis added). Intervenors argue that even if a policy exclusion applies such that Ooida has no duty to defend, Ooida is still required by the MCS-90 Endorsement to pay any judgment against Williams in the underlying suit. Ooida counters that, under the clause in the endorsement exempting liability for "injury or death of the insured's employees while engaged in the

course of their employment," it does not have a duty to indemnify Williams for Moses' death.

Ooida assumes that the "insured" in the MCS-90 Endorsement is Moses, not Williams, and thus that it is exempted where Moses' employee (Williams) caused the accident in the course of his employment. The question before us is thus whether the "separation of insureds" clause, which made Williams the "insured" for the purposes of the policy exclusions, similarly operates to make Williams the "insured" in the context of the MCS-90 Endorsement. We find that it does not.

The federal regulation that requires the MCS-90 Endorsement clearly defines the "insured" as "the motor carrier *named* in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." [Emphasis added.] 49 C.F.R. § 387.5. The Federal Motor Carrier Safety Administration has issued regulatory guidance emphasizing that "Form MCS-90. . . [is] not intended, and do[es] not purport, to require a motor carrier's insurer or surety to satisfy a judgment against any party other than the carrier named in the endorsement or surety bond or its fiduciary." Federal Motor Carrier Safety Administration, *Regulatory Guidance for Forms Used To Establish Minimum Levels of Financial Responsibility of Motor Carriers*, 70 FR 58065-01 (October 5, 2005). Thus, Moses, as the *named* insured, is the "insured" for purposes of applying MCS-90 Endorsement.[6]

The MCS-90 Endorsement does not indemnify "employees" of the named insured acting in the course of their employment. Williams, as a statutory

_____

[6] This holding is not in conflict with the *Consumers County* principle that the meaning of a term in an insurance policy does not vary with the context, 307 F.3d at 362. Rather, the MCS-90 Endorsement, which relates solely to the duty to indemnify, is treated differently from the policy exclusions, which govern the duty to defend. The public policy purpose of the MCS-90 Endorsement is therefore entirely distinct from the question of coverage.

"employee" of Moses, *see* Part IIB *supra*, does not fall within the ambit of the MCS-90 Endorsement, and Ooida therefore has no duty to indemnify Williams.

IV

Because we find that Ooida has no duty to defend or to indemnify under the policy, we REVERSE the district court and RENDER summary judgment in favor of Ooida.