ALIA MOSES, UNITED STATES DISTRICT JUDGE
On March 31, 2016, Plaintiff Hallmark County Mutual Insurance Company ("Hallmark") filed a complaint for declaratory judgment under 28 U.S.C. § 2201 against Defendant Ace American Insurance Company ("Ace"), asking the Court to determine whether Ace must defend certain defendants in a tort action filed in Val Verde County, Texas. (ECF No. 1.) Intervenor Colony Insurance Company ("Colony") then filed a complaint in intervention, also seeking a declaratory judgment that Ace has a duty to defend. (ECF No. 17.)
After Hallmark filed its first amended complaint, Ace filed a motion for summary judgment against Hallmark and Colony. (ECF No. 24.) Hallmark then filed a cross motion for summary judgment against Ace. (ECF No. 25.) For the reasons explained below, the Court finds that Ace's motion for summary judgment should be GRANTED IN FULL and Hallmark's motion DENIED .
I. BACKGROUND
A. The Underlying State Court Tort Action
On July 19, 2012, Border Patrol Agent James Ray Dominguez was walking along the shoulder of Highway 90 when he was struck by a 1997 white Ford F-350 truck owned and driven by Jorge Luis Flores. Dominguez later died from his injuries.
Thereafter, Dominguez's family ("the Dominguez Family Plaintiffs") filed suit in the 83rd District Court of Val Verde, Texas, under the Texas Wrongful Death Act and Texas Survival Statute. The ninth amended petition, the most current petition in the record, named Jorge Luis Flores as a defendant and alleged that he operated his vehicle in a negligent manner, resulting in the wrongful death of Dominguez. (Pl.'s Ninth Am. Original Pet., Cause No. 30315, ECF No. 24-1.) The petition also alleged that Flores was acting in the course and scope of his employment at the time of the incident. (Id. at 12-14.) Thus, *562 the petition named as defendants various entities related to Flores's employment, including: (1) Precision Pipeline, LLC, (2) MasTec North America, Inc., (3) MasTec, Inc., (4) Tekrock Trenching, LLC, (5) Bar None Investments, LLC, and (6) Bar None Equipment (an assumed name of Bar None Investments, LLC) (Id. at 1-2.).
According to the petition, Precision Pipeline, LLC subcontracted with Tekrock Trenching, LLC to build and trench a pipeline called the "Lone Star Project." (Id. at 7.) Precision Pipeline, LLC is a subsidiary of MasTec North America, Inc. and MasTec, Inc. (hereinafter jointly referred to as "Precision"). (Pl.'s Eighth Am. Pet., ECF No. 23-1 at 7.) Tekrock Trenching, LLC, in turn, is a subsidiary of Bar None Investments, LLC d/b/a Tekrock Trenching, LLC, which is also the parent company to Defendants Bar None Equipment (an assumed name of Bar None Investments, LLC) and Tekrock, LLC (hereinafter jointly referred to as "Tekrock"). (Pl.'s Ninth Am. Pet., ECF No. 24-1 at 7.)
Essentially, the petition alleged that Precision and Tekrock formed a joint enterprise to build the pipeline, and both had shared control over Flores as an employee, who at the time of the accident was using his vehicle for work purposes pursuant to a lease agreement between Precision and Flores. (Id. at 12-15.) Accordingly, the Dominguez Family Plaintiffs allege that Precision and Tekrock are vicariously liable for the actions of Flores and are also jointly liable for negligently hiring Flores and for failing to properly train and supervise him. (Id. )
B. Duty to Defend
The question now is who has a duty to defend Tekrock and Flores in the state court suit. Throughout the state court proceeding, Hallmark has defended Tekrock pursuant to the terms of an insurance policy, Policy Number TXA502320 (the "Hallmark Policy"), issued by Hallmark to Tekrock for the period of March 30, 2012, to March 30, 2013. (Pl.'s First Am. Compl., ECF No. 23 at 4.)
Ace, however, insured Precision under Policy Number H08690509 (the "Ace Policy") for the policy period of September, 15, 2011, to September 15, 2012, which also covers the date of the accident. (Id. at 5.) Under the Ace Policy, Ace agreed to "pay all sums an 'Insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' " (Sec. II(A), ECF No. 19-3 at 26.) The policy also states that Ace has "the right and duty to defend any 'Insured' against a 'suit' asking for" damages. (Id. ) Under Section 11(A)(1) of the Ace Policy, "Who Is An Insured," an "insured," in pertinent part, is defined as:
(a) [The named insured] for any covered "auto;"
(b) Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
(1) The owner or anyone else from whom you hire or borrow a covered "auto."
(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
...
(c) Anyone liable for the conduct of an "Insured" described above but only to the extent of that liability.
(ECF No. 19-3 at 26-27 (emphasis added).)
At some point, Hallmark made a determination that Tekrock and Flores were "insureds" under the Ace Policy and demanded that Ace, rather than Hallmark, defend them in state court as the primary *563 insurer. (Id. at 9.) When Ace refused, Hallmark, under a reservation of rights, filed the present declaratory judgment action pursuant to § 2201, which allows a party to seek declaratory relief. In its first amended complaint for a declaratory judgment, Hallmark asks the Court to declare that Ace has a duty to defend Tekrock and Flores in state court. (Id. at 11.) Hallmark also asks the Court to declare that the Ace Policy is primary to the Hallmark Policy, meaning the Hallmark Policy would only cover liability in excess of the coverage provided in the Ace Policy. (Id. )
In support of its argument that Ace has a duty to defend, Hallmark asserts that Flores's Ford F-350 is a covered auto under the Ace Policy, since the policy provides liability coverage under a "Symbol 1" designation, which renders any auto a covered auto. Although Hallmark does not contend that Flores or Tekrock qualifies as an insured under Section II(A)(1) of the main policy,[1] Hallmark argues that Flores qualifies as an insured under Endorsement 35 of the Ace Policy, or Form CA 99 18 03 10, because the state court petition alleges that Flores leased his Ford F-350 to Precision. Endorsement 35 states that for all autos "hired" for a period of 180 days or longer,
A. Any "auto" described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire, borrow or lease.
B. Changes in Liability Coverage
For an "auto" designated or described in the Schedule, Who Is An Insured is changed to include as an "Insured" the owner or lessor named in the Schedule. However, the owner or lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omission by:
1. You;
2. Any of your "employees" or agents; or
3. Any person, except the owner or lessor or any "employee" or agent of the owner or lessor, operating an "auto" with the permission of any of B.1. and/or B.2. above.
(ECF No. 19-3 at 109.) Hallmark argues that the allegation of a lease agreement between Flores and Precision is sufficient to trigger insured status for Flores under Endorsement 35. Hallmark then argues that if Flores is an insured under Endorsement 35, Tekrock also is, since (1) the state court petition alleges that Precision and Tekrock are jointly and severally liable in the tort action; and (2) the Ace policy covers anyone liable for Flores's actions. (Id. )
Alternatively, Hallmark argues that Endorsement 34, or Form CA 99 33 02 99, applies. Endorsement 34 adds an additional insured under the "Who Is An Insured" section of the main policy and states: "Any 'employee' of yours is an 'insured' while using a covered 'auto' you don't own, hire or borrow in your business or your personal affairs." (ECF No. 19-3 at 108.) Hallmark argues that because Flores was an employee using the covered auto at the time of the accident, he qualifies as an insured.
On September 13, 2016, Colony filed a complaint in intervention, essentially seeking the same relief as Hallmark. (ECF No. 17.) Colony issued an umbrella policy to Tekrock that attaches after the exhaustion of any primary policies. (Id. at 2.) Like Hallmark, Colony now seeks a declaration that Ace has a duty to defend Tekrock and Flores, and that Colony's coverage only *564 applies after all other policies have been exhausted. (Id. at 3.)
On October 21, 2016, Ace filed the present motion for summary judgment, seeking judgment in its favor on all claims by Hallmark and Colony. (ECF No. 24.) Ace disputes that its policy requires it to defend Tekrock and/or Flores in the underlying state court suit. According to Ace, Tekrock and Flores are not named insured parties under Ace's insurance policy, neither qualifies as an additional insured under the policy, and neither qualifies as an additional insured under any of the Ace Policy endorsements. Because it owes no duty to defend, Ace argues that it is entitled to summary judgment on all of Hallmark's and Colony's claims.
On November 4, 2016, Hallmark filed a response to the motion and a cross motion for summary judgment. (ECF No. 25.) In the motion, Hallmark also contends that judgment in its favor is warranted. Essentially, Hallmark raises one ground for summary judgment-that Endorsement Number 35 makes Flores an insured under the Ace Policy, thus also making Tekrock an insured under the policy. Colony did not respond to Ace's motion for summary judgment or file its own motion.
II. SUMMARY JUDGMENT STANDARD
Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." Roberson v. Alltel Info. Servs. , 373 F.3d 647, 651 (5th Cir. 2004). The moving party satisfies its burden of demonstrating that no genuine issues of fact are in dispute by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;
or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
Fed. R. Civ. P. 56(c)(1)(A). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. Forsyth v. Barr , 19 F.3d 1527, 1533 (5th Cir. 1994).
If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Little v. Liquid Air Corp. , 37 F.3d 1069, 1075 (5th Cir. 1994). "Although [the Court draws] all justifiable inferences in the light most favorable to the non-moving party, the non-movant must present sufficient evidence on which a jury could find in his favor." Whitt v. Stephens Cty. , 529 F.3d 278, 282 (5th Cir. 2008). "While the party opposing the motion may use proof filed by the movant to satisfy his burden, 'only evidence-not argument, not facts in the complaint-will satisfy' the burden." Johnston v. City of Houston , 14 F.3d 1056, 1060 (5th Cir. 1994) (quoting Solo Serve Corp. v. Westowne Assoc. , 929 F.2d 160, 164 (5th Cir. 1991) ). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id.
III. APPLICABLE LAW
The primary issue before the Court is whether Ace must defend Tekrock *565 and/or Flores in the underlying lawsuit. In determining a party's duty to defend,
the court must first determine whether the party alleging coverage qualifies as an additional insured under the policy. If the party alleging coverage does qualify as an additional insured, the court must then determine whether, under Texas's eight-corners rule, the facts alleged in the underlying state court proceedings are sufficient to trigger the duty to defend under the policy. An affirmative answer to both is required to hold that there is a duty to defend. The party alleging coverage bears the burden on each of these issues.
ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc. , 699 F.3d 832, 839 (5th Cir. 2012) (citations omitted).
The eight-corners rule, also known as the "complaint allegation rule," states that "[a]n insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy." Fielder Rd. Baptist Church v. GuideOne Elite Ins. Co. , 139 S.W.3d 384, 388 (Tex. App. 2004) (citing Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc. , 939 S.W.2d 139, 141 (Tex. 1997) ). Under this rule, a court generally must look to the plaintiff's latest amended pleading, "considered in the light of the policy provisions, without regard to the truth or falsity of those allegations." GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church , 197 S.W.3d 305, 308 (Tex. 2006) ; Nat'l Union , 939 S.W.2d at 141. "Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage." GuideOne Elite , 197 S.W.3d at 308.
A court must "construe the pleadings liberally" and "resolve all doubts regarding the duty to defend in favor of the duty." Zurich Am. Ins. Co. v. Nokia, Inc. , 268 S.W.3d 487, 491 (Tex. 2008). Generally courts may not "(1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." Guar. Nat'l Ins. Co. v. Azrock Indus. , 211 F.3d 239, 243 (5th Cir. 2000). Courts, however, may draw "any reasonable inferences that flow from the facts alleged." Liberty Mut. Ins. Co. v. Graham , 473 F.3d 596, 601 (5th Cir. 2006).
Some courts have recognized an exception to the eight-corners rule to permit the consideration of extrinsic evidence. Although the Texas Supreme Court has not explicitly endorsed doing so, the Supreme Court has favorably cited other courts who have recognized such an exception where "courts have drawn a very narrow exception, permitting the use of extrinsic evidence only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim." GuideOne Elite , 197 S.W.3d at 308 (citing, e.g., Northfield Ins. Co. v. Loving Home Care, Inc. , 363 F.3d 523, 531 (5th Cir. 2004), which discussed the exception but did not apply it). Since GuideOne , the Fifth Circuit and various Texas appellate courts have explicitly recognized and applied the exception. See, e.g. , Star-Tex Res., L.L.C. v. Granite St. Ins. Co. , 553 Fed.Appx. 366, 371 (5th Cir. 2014) ; Ooida Risk Retention Grp., Inc. v. Williams , 579 F.3d 469, 476 (5th Cir. 2009) ; Weingarten Realty Mgmt. Co. v. Liberty Mut. Fire Ins. Co. , 343 S.W.3d 859, 869 (Tex. App. 2011) (holding that failing to recognize an exception "would impose on insurers the duty to defend parties who-by accident or otherwise-plead themselves into an insurance policy to which they were previously a stranger. If a contract does not exist, a duty to defend should not be allowed to spring into existence based on artful or inartful pleading").
*566 IV. ANALYSIS
As mentioned previously, there are two endorsements the Court must examine to determine if Flores or Tekrock qualifies as an insured under the Ace Policy, specifically Endorsements 34 and 35. These endorsements became effective on the same date the main Ace Policy was executed and should thus be read in conjunction with the main policy.
A. Endorsement 34
Endorsement 34 states, "Any 'employee' of yours is an 'insured' while using a covered 'auto' you don't own, hire or borrow in your business or your personal affairs." (ECF No. 19-3 at 108.) Based on its arguments in its motion for summary judgment, Hallmark appears to have now abandoned the argument that Endorsement 34 applies. The Court also finds that it would not apply. It is undisputed that Flores was driving the Ford F-350 at the time of the accident and was acting in the course and scope of his employment. However, it is also undisputed that the Ford F-350 was a covered auto that Precision hired and did not own. Both the ninth amended petition and the rental agreement establish that Flores was driving a hired vehicle at the time of the accident, since it was rented/leased to Precision by Flores. Accordingly, Endorsement 34 does not apply.
B. Endorsement 35
Endorsement 35 presents a more complicated case. Endorsement 35 essentially reclassifies a covered auto that is "hired, borrowed, or leased" for 180 days or more to one that is "owned" by Precision. It also expands the definition of an "insured" under the Ace Policy to include the owner or lessor of the covered auto, but only for bodily injury or property damages resulting from the acts or omission by (1) Precision, (2) Precision's employees or agents, or (3) any person operating the auto with the permission of Precision or its employees or agents, except the owner or lessor or any employee or agent of the owner or lessor.
In support of coverage under Endorsement 35, Hallmark argues that the Court should look solely to the factual allegations of the ninth amended petition to determine Ace's duty to defend. The pertinent allegations state:
Defendant Precision maintained a formal, written lease compensation agreement with Defendant Flores for the use/rental of his vehicle on the date in question... Defendants Precision and Tekrock expressly leased and authorized Jorge Luis Flores to use his own vehicle in the performance of his work and the use of said vehicle is within the scope of Precision's and Tekrock's business.
(Pl.'s Ninth Am. Original Pet., ECF No. 24-1 at 8.) Although the petition does not indicate the duration of the lease, Hallmark argues that the petition should be construed in its favor since the wording of the petition indicates that the lease potentially could have been for 180 days or more.
Ace, however, argues that the allegations in the petition are too vague to establish that the lease was for 180 days or longer. Ace also argues that it should be able to rely on the actual lease agreement, which is a day-by-day rental policy signed just 35 days before the date of the accident. (See ECF No. 33-1 at 4.) In support, Ace argues that under Texas law, when the scope of coverage is determined "from the language employed in the insurance policy, and if the policy directs us elsewhere, [a court] will refer to an incorporated document to the extent required by the policy." In re Deepwater Horizon , 470 S.W.3d 452, 460 (Tex. 2015). Alternatively, Ace argues that the Court should apply the exception to the eight-corners rule and look at the actual lease agreement, since it *567 does not touch on the merits of the underlying third-party claims and can easily resolve a fundamental policy coverage question.
Hallmark, in turn, objects to the admissibility of the rental agreement on grounds that it is not properly authenticated and contains inadmissible hearsay. Hallmark further argues that there is no recognized exception to the eight-corners rule, and thus the Court should not consider any extrinsic evidence. Finally, Hallmark argues that the lease agreement, even if considered, still fails to establish the length of the term of the agreement and should be construed in favor of coverage of the insured.
The Court agrees with Ace that the allegations in the petition are too vague to support an inference that the lease was for 180 days or more. According to the Fifth Circuit, when allegations in the underlying petition "lend themselves to multiple reasonable inferences, we cannot determine, based solely on the pleadings, whether there is a potentially covered claim." Star-Tex Resources , 553 Fed.Appx. at 370 ; see also Ooida , 579 F.3d at 475 (finding that the underlying complaint did not establish a person's role at the time of an accident, therefore requiring consideration of extrinsic evidence). Although an inference that the lease was for 180 days or more is reasonable, it is not the only reasonable inference, since it is just as likely that the lease was for a shorter term.
Since the petition is ambiguous, the only way Hallmark can establish coverage under the Ace Policy would be to rely on extrinsic evidence. Although Hallmark argues that doing so is improper, the Court finds that extrinsic evidence should be considered, for two reasons. First, Freeport Welding instructs that before a court follows the eight-corners rule, it must determine whether the party alleging coverage qualifies as an additional insured under the policy. 699 F.3d at 839. In Freeport Welding , the Fifth Circuit looked to a purchase agreement in making the initial coverage determination.[2] Thus, it is acceptable for the Court to first look at extrinsic evidence for purposes of determining Flores's and Tekrock's status as insureds.
Second, extrinsic evidence is also permitted under the eight-corners rule. Although the Texas Supreme Court has not definitively ruled on the issue, this court is bound by Fifth Circuit case law-which now recognizes the exception-until the Texas Supreme Court declares otherwise. See Star-Tex Resources , 553 Fed.Appx. at 370 ; see also Ooida , 579 F.3d at 475. Again, consideration of extrinsic evidence is proper only "when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim." GuideOne Elite , 197 S.W.3d at 308. The lease rental agreement, which unquestionably meets this requirement, would thus be admissible.
The rental agreement, signed and dated June 15, 2012, indicates that Precision will pay Flores a daily rate of $83 for the use of Flores's Ford F-350 when it is used while working on the pipeline project. (ECF No. 33-1 at 4.) It was executed just 35 days before the date of the accident involving Dominguez. The rental agreement was properly authenticated as a business record under Federal Rules of Evidence 803(6) and 902(11), and is therefore admissible summary judgment evidence. (See Kirkman Decl., ECF No. 33-1 at 2-3.)
The Court finds that the rental agreement does not establish that the *568 Ford F-350 was "hired for a period of 180 days or longer." (ECF No. 19-3 at 109.) In interpreting the rental agreement and the phrase "hired for a period of 180 days or longer," the Court must apply basic contractual rules. Forbau v. Aetna Life Ins. Co. , 876 S.W.2d 132, 133 (Tex. 1994). "Under Texas law, the interpretation of an unambiguous contract is a question of law for the court to decide by 'looking at the contract as a whole in light of the circumstances present when the contract was entered.' " Gonzalez v. Denning , 394 F.3d 388, 392 (5th Cir. 2004) (quoting Philadelphia Am. Life Ins. Co. v. Turner , 131 S.W.3d 576, 587 (Tex. App. 2004) ). "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." Id. (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, v. CBI Indus., Inc. , 907 S.W.2d 517, 520 (Tex. 1995) ). "If, however, the language of the contract is subject to two or more reasonable interpretations or meanings, it is ambiguous." Denning , 394 F.3d at 392.
The phrase "hired for a period of 180 days or more" in Endorsement 35 is subject to two reasonable interpretations and is therefore ambiguous. First, it could mean that the lease must have lasted at least 180 days. Alternatively, it could mean that the lease/rental contract itself must be for 180 days or more. Either way though, neither Flores or Teckrock would qualify as an insured. First, the rental agreement was signed just 35 days before the accident. Thus, the actual lease term fell far short of 180 days. Second, based on the clear language of the rental agreement itself, the contractual lease period was not for 180 days or more. The contract period was for one work day and was renewable on a daily basis. Unquestionably the overall contract period feasibly could have lasted a total of more than 180 cumulative days, since there is no clear end date. But the Court, in applying contract rules, must "ascertain the true intent of the parties as expressed in the instrument." Nat'l Union Fire , 907 S.W.2d at 520. There is simply no evidence of the intent of the parties to form a binding agreement lasting at least 180 days.[3] Because there was no intent, the rental agreement fails to trigger insured status for Flores, and thus Tekrock, under Endorsement 35.[4]
V. CONCLUSION
Based on the foregoing, the Court concludes that there is no genuine dispute as to any material fact and that Ace is entitled to summary judgment. Neither Flores nor Tekrock is a named insured under Ace's insurance policy, neither qualifies as an additional insured under the policy, and neither qualifies as an additional insured under any of the Ace Policy endorsements. Because Ace has no duty to defend Flores or Tekrock in the underlying state court action, Hallmark and Colony are not entitled to a declaratory judgment. It is therefore ORDERED that Ace's motion for summary judgment is GRANTED IN FULL, and Hallmark's motion for summary judgment is DENIED . Judgment shall be entered in favor of Ace, and the claims against it by both Hallmark and Colony DISMISSED WITH PREJUDICE . It is further ORDERED that a *569 clerk's judgment shall be entered immediately, terminating the present cause of action.

It is alleged in the ninth amended petition and it is undisputed that Flores is the owner of the covered auto. Thus, Flores would be excluded under provision (b)(1), as would Tekrock under provision (c).

Such is in line with In Re Deepwater Horizon , which also found that a court may look outside the eight corners of the policy and the petition, when a policy refers the court elsewhere to determine coverage. 470 S.W.3d at 460.

Even if the Court were to construe the contract to be one for an indefinite period of time, Texas courts have ruled that contracts of that type are unambiguous and terminable at will, meaning that either Flores or Precision could have terminated the contract at any time. See, e.g. , Providence Land Servs., LLC v. Jones , 353 S.W.3d 538, 541-43 (Tex. App. 2011). Thus, again, the intent was not to create a binding contract lasting 180 days or more.

Ace argues other grounds as to why summary judgment is appropriate, which the Court need not address.