# Supreme Court of Texas

No. 21-0853

JNM Express, LLC, ANCA Transport, Inc., Omega Freight Logistics, LLC, Jorge Marin, and Silvia Marin,

*Petitioners,*

v.

Lauro Lozano Jr. and Irene Lozano,

*Respondents*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

**PER CURIAM**

Following a jury trial, the district court rendered a substantial judgment for a truck driver and his wife against several trucking companies and their owners. The court of appeals largely affirmed that judgment. We reverse in part, render judgment in part, and remand for the court of appeals to consider the remaining issues in accordance with this opinion.

While driving an eighteen-wheeler from Texas to Maryland in May 2015, truck driver Lauro Lozano fell asleep and crashed into another tractor-trailer. He was flown to an area hospital, where he stayed for about a month with severe injuries, including multiple fractured and shattered bones. At the time of the accident, Mr. Lozano was driving a

truck owned by JNM Express, LLC, but leased to ANCA Transport, Inc. JNM and ANCA are both solely owned by Jorge Marin, and the two companies share equipment and drivers. Mr. Marin and his wife, Silvia, jointly own a third business relevant to this lawsuit, Omega Freight Logistics, LLC. Omega is a brokerage company; it matches truck loads with companies like JNM and ANCA but claims that it neither owns trucks nor employs truck drivers. Mr. and Mrs. Marin both manage each of the three companies.

Mr. Lozano and his wife, Irene, sued JNM, ANCA, Omega, and the Marins individually.[1] The Lozanos alleged that Mr. Lozano had been driving in violation of federal hours-of-service regulations on the trip that led to the accident—and that Mr. Lozano had alerted Mr. Marin to this problem when Mr. Marin asked him to make the trip. Mr. Marin's response, the Lozanos said, was to instruct Mr. Lozano to falsify his logbook to make it reflect that he had taken the required off-duty hours. According to the Lozanos, Mr. Lozano complied with this directive out of concern that he would otherwise lose his job. They also alleged that the accident occurred because Mr. Marin pressured Mr. Lozano to drive without the required rest.

The Lozanos asserted negligence and gross negligence claims against both Mr. and Mrs. Marin and the companies. The Lozanos sought actual damages from all defendants and exemplary damages from JNM and Mr. Marin.[2] The Lozanos further asked the court to

---

[1] Petitioners in this Court are JNM, ANCA, and Omega (the "companies"), Mr. Marin, and Mrs. Marin. Mr. and Mrs. Lozano are the respondents.

[2] The trial court ultimately awarded exemplary damages against each

pierce the corporate veil and hold the Marins jointly and severally liable with each other and with the three companies.

After a trial, the jury found that Mr. Lozano was acting as an employee for all three companies and that the negligence and gross negligence of all three companies proximately caused the accident. The jury awarded Mr. Lozano nearly $3.9 million in damages for past and future physical pain and mental anguish, loss of earning capacity, disfigurement, and physical impairment, as well as medical expenses paid by Blue Cross Blue Shield.[3]  The jury also awarded Mrs. Lozano over $1.1 million in damages for past and future loss of household services and past and future loss of consortium.[4]  The jury awarded $25 million in exemplary damages from each of the three companies, totaling $75 million; no question was submitted about exemplary damages for Mr. or Mrs. Marin.[5]  Finally, the jury also pierced the

_____

company.

[3] The breakdown of these damages is as follows: (1) past physical pain and mental anguish: $300,000; (2) future physical pain and mental anguish: $700,000; (3) past loss of earning capacity: $46,000; (4) future loss of earning capacity: $550,000; (5) past disfigurement: $500,000; (6) future disfigurement: $600,000; (7) past physical impairment: $250,000; (8) future physical impairment: $750,000; and (9) medical expenses paid by Blue Cross Blue Shield: $184,006.34.

[4] This number includes: (1) past loss of household services: $100,000; (2) future loss of household services: $200,000; (3) past loss of consortium: $275,000; and (4) future loss of consortium: $550,000.

[5] Petitioners complained below that the trial court erred in submitting jury charge questions about ANCA's and Omega's alleged gross negligence and liability for exemplary damages, as the Lozanos had not asked for exemplary damages against those two companies in their pleadings. The court of appeals concluded this issue was waived. *See* 627 S.W.3d 682, 693 (Tex. App.—Corpus

3

corporate veil as to both Mr. and Mrs. Marin with respect to each of the companies. The jury was not, however, asked to make any finding about whether the companies were alter egos of each other.

The trial court rendered judgment in accordance with the jury's verdict, holding all five defendants—both of the Marins and each of the companies—jointly and severally liable for all actual-damages awards. The court held the Marins jointly and severally liable with each respective company for the award of exemplary damages against that company, but no company was held jointly and severally liable for the exemplary damages awarded against any other company. The court later amended the judgment to reduce the exemplary damages to approximately $2.9 million per company under Section 41.008(b) of the Civil Practice and Remedies Code. This resulted in a total judgment, not including prejudgment interest, of over $13.7 million.

With one exception, the court of appeals affirmed the trial court's judgment. The exception was to eliminate the Marins' joint and several liability for the exemplary damages awarded against the companies.[6] 627 S.W.3d 682, 703 (Tex. App.—Corpus Christi–Edinburg 2021). In otherwise affirming, the court concluded the evidence was sufficient to support the jury's "finding that all three of the [companies] were the employers of [Mr.

---

Christi–Edinburg 2021). In their merits brief in this Court, petitioners include this issue among the issues presented but do not address or analyze it until their reply brief. We conclude the issue is not properly before us. Should the court of appeals decide that a new trial is required, *see infra* note 15, the trial court would again have to determine how to submit the case to the jury, and the parties would be able to present their respective arguments about whether and against whom exemplary damages may be sought.

[6] Respondents have not challenged that portion of the judgment below, which we leave undisturbed.

4

Lozano]" and to support the "jury's alter ego finding and hold the Marins jointly and severally responsible for the actions of the [companies]." *Id.* at 694, 701. The Marins petitioned for this Court's review.

The Marins and the companies argue that the court of appeals erred in numerous respects as to whether they could be held liable at all and, if so, whether the damages awarded were excessive. Several issues, however, depend to some degree on the first step of the analysis: resolving whether Mr. Lozano was an employee. The answer to this question, for example, may determine whether the companies and the Marins were entitled to a comparative-negligence instruction,[7] which would have allowed the jury to assess whether Mr. Lozano himself bore some responsibility for choosing to continue driving despite being fatigued. *See* TEX. LAB. CODE § 406.033(a)(1).[8] This issue in turn implicates other questions related to liability and whether the damages were excessive.

Petitioners contend that Mr. Lozano was not the companies' employee. They argue that (1) the trial court improperly defined "employer" and "employee" in the jury charge by using the definitions from the Federal Motor Carrier Safety Regulations ("federal

---

[7] While we analyze the definitions of "employer" and "employee" that the trial court used in the jury charge, it is premature for this Court to resolve, and we express no opinion regarding, the instructions, definitions, or questions (if any) to which the companies and the Marins were entitled.

[8] "Labor Code § 406.033, which is part of the Workers' Compensation Act, governs an employee's personal-injury action against his or her employer, when the employer is a nonsubscriber under the Act." *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000). A "nonsubscribing employer is not entitled to a jury question on its employee's alleged comparative responsibility." *Id.* at 352. As the court of appeals in this case observed, petitioners "do not dispute that the [companies] are nonsubscribing employers." 627 S.W.3d at 693.

5

regulations")[9] rather than using the state common-law definitions; and (2) properly defined, neither JNM, ANCA, nor Omega was Mr. Lozano's employer. JNM and ANCA were clearly Mr. Lozano's employer under the federal regulations' definitions. *See* 49 C.F.R. § 390.5; *see also* 49 U.S.C. § 31132(2)-(3) (statutory basis for the federal regulations). Several points, however, are less obvious, including (1) whether the federal regulations impose a duty on motor carriers that runs to their *drivers* rather than only members of the *public* whom such drivers might injure,[10] which implicates whether the federal regulations' definitions may properly be used in a tort suit brought *by a driver*; and (2) whether the federal regulations' definitions of "employer" and "employee" preempt the state-law analysis for determining employment status for purposes of the workers'-compensation system and state tort law.[11]

The court of appeals did not reach these issues. It held that

---

[9] Without commenting on their legal merits, we note that Texas state courts have dealt with these federal regulations in the context of state-law tort actions. *See, e.g.*, *Pilgrim's Pride Corp. v. Burnett*, No. 12-10-00037-CV, 2012 WL 381714, at *9 (Tex. App.—Tyler Feb. 3, 2012, no pet.) ("[S]everal Texas cases have held that a violation of an administrative regulation such as the FMCSRs, in appropriate cases, serves as a basis for a negligence finding."); *Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 839 (Tex. App.—Fort Worth 2006, no pet.) ("Several Texas cases consider sections of the FMCSR in the negligence per se context . . . ."). Our analysis does not reach so far; it is limited to the applicability of the federal regulations' definition of "employee" within the context of this case.

[10] The federal regulations "impose various duties on motor carriers who classify their drivers as independent contractors in order to avoid liability for the drivers' negligence." *Gonzalez v. Ramirez*, 463 S.W.3d 499, 502 (Tex. 2015).

[11] *See, e.g.*, *Simpson v. Empire Truck Lines, Inc.*, 571 F.3d 475, 476-77 (5th Cir. 2009) (holding that the federal regulations and a particular statutory provision did not preempt a related provision regarding employment status for motor carriers and owner–operators in the Texas Workers' Compensation Act).

petitioners failed to preserve their objection to using the federal regulations' definitions because their objection did not explain their reasoning for why the common-law definitions should apply instead. 627 S.W.3d at 692. According to the court, petitioners only "complained that the definition did not apply to Omega," and their "objection made no mention of ANCA or JNM." *Id.* But, the court concluded, "none of the objections to the charge raised on appeal comport with the objections appellants made to the trial court." *Id.*

We disagree with the court of appeals' conclusion on preservation. At the charge conference, defense counsel objected to the use of the federal regulations' definitions *at all*, arguing that the trial court should have used the Texas Pattern Jury Charge instead.[12] Counsel alternatively objected to the specific application of the federal regulations' definitions to Omega.[13] The trial court overruled these objections. Petitioners' arguments on appeal are more nuanced than at the charge conference, but the upshot is the same: the jury charge should have used the common-law definitions from the Pattern Jury Charge, not the federal

---

[12] "Question No. 1, Your Honor, I object to the use of those three instructions that are following Question No. 1. . . . It defines 'employee'—if I could hand this to the Court, Your Honor, and a copy for [plaintiffs' counsel]. That's 10.1 of the Pattern Jury Charge. The definition that it uses is for 'employee,' but [plaintiffs' counsel] has put on there some—a different definition for 'employee,' an instruction for 'employer,' and another instruction that he added, and we object to all of those."

[13] "[A]nd then [plaintiffs' counsel has] got some case law. Your Honor, [his] cases here have to do with motor carriers and their drivers under the Federal regulations. Omega Freight, which is the last one on the list is not a motor carrier. It's not a driver. It's a broker. So, these definitions would not apply to Omega Freight. So, that's my further objection, Your Honor."

7

regulations' definitions.[14]

Petitioners repeatedly made similar arguments both before and after the charge conference, using common-law considerations (not the federal regulations' definitions) to argue that no defendants, and certainly not all, were Mr. Lozano's employer. Their answer to the Lozanos' petition also stated that Mr. Lozano was not their employee. This sufficiently put the trial court on notice of the objection. *See* TEX. R. CIV. P. 274; *Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012) ("[T]he procedural requirements for determining whether a party has preserved error in the jury charge are explained by one basic test: whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." (internal quotation marks omitted)).

The point of this discussion is that, because of the court of appeals' mistaken view of preservation, that court has not yet considered the merits of whether the trial court correctly used the federal regulations' definitions in the jury charge. We remand the case to that court so that it may do so in the first instance. If the federal regulations' definitions should not have been used, then the court of appeals should address whether JNM and ANCA constitute an "employer" under state law and

---

[14] It is certainly true that pattern jury charges are not themselves the law, and courts must depart from a pattern jury charge when doing so is necessary to accurately state the law or submit a question to the jury. *See Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 45 (Tex. 2007). But asking a trial court to follow them is hardly out of the ordinary. "[O]ur trial courts routinely rely on the Pattern Jury Charges in submitting cases to juries, and we rarely disapprove of these charges." *Id.* The Lozanos acknowledge that "Petitioners proffered Pattern Jury Charge 10.1." *See also supra* note 12. The objection to the Lozanos' proposed charge preserved for appeal the issue of whether the pattern jury charge was the correct expression of the law.

8

in the context of this case.[15] *See Waste Mgmt. of Tex., Inc. v. Stevenson*, 622 S.W.3d 273, 277-80 (Tex. 2021) (applying the common-law right-to-control test to determine employment status under the Workers' Compensation Act).

Properly resolving Mr. Lozano's employment status is particularly important because it may affect several additional issues, most prominently whether petitioners were entitled to a comparative-negligence defense, which in turn would implicate the alleged excessiveness of damages and perhaps even whether any defendant may be liable for damages at all.[16] In addition, the court of appeals' analysis of whether petitioners owed a tort duty to Mr. Lozano rests on the applicability of the federal regulations' duty to *drivers* (not just to the public), as well as the characterization of Mr. Lozano as an employee. Because of the issues the employer–employee determination may implicate, it is premature for this Court to address most of the remaining issues, which we therefore leave to the court of appeals to address to the extent needed.

We may resolve two issues now, however, which will narrow the scope of the case on remand. First, we hold that the evidence is legally

---

[15] If the court of appeals determines that incorrect definitions were used, that court may further determine whether a new trial is necessary to address related questions like whether the entities are "employers" (or if a new trial is necessary because of the consequences of the entities being "employers" under state law, such as the need for a jury to consider previously unavailable defenses). This opinion neither compels nor forecloses the need for—or outcome of—a new trial.

[16] *See* TEX. CIV. PRAC. & REM. CODE § 33.001 ("In an action to which [the proportionate-responsibility statute] applies, a claimant may not recover damages if his percentage of responsibility is greater than 50 percent.").

insufficient for a finding that Mr. Lozano was Omega's employee under either the federal or common-law definition of "employee." The federal regulations' definition, on which the trial court relied, broadly defines "[e]mployee" as

> any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (*including an independent contractor* while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler.

49 C.F.R. § 390.5 (emphasis added). This definition "eliminat[es] the common law employee/independent contractor distinction" in order "to discourage motor carriers from using the independent contractor relationship to avoid liability exposure at the expense of the public." *See Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 366 (5th Cir. 2002).[17]

But the employee must still be "employed by" the employer, either directly or as an independent contractor. *See* 49 C.F.R. § 390.5. Drivers who work "on a load-by-load basis" for the employer, *see Consumers Cnty.*, 307 F.3d at 363, or who work "occasionally" for the employer, *see Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 474 (5th Cir. 2009) (discussing *Consumers Cnty.*, 307 F.3d at 363-64, and 49 C.F.R. § 390.5), could qualify as being "employed by" the employer. *See also Independent Contractor*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Someone who is

---

[17] "Section 390.5 provides the only definition of the term 'employee' used in the federal motor carrier safety regulations, a subchapter of the Department of Transportation regulations." *Consumers Cnty.*, 307 F.3d at 366 n.4 (citing 49 C.F.R. §§ 350-399).

entrusted to undertake a specific project but who is left free to do the assigned work and to choose the method for accomplishing it.").

Here, however, the only evidence supporting an employment relationship of any kind between Omega and Mr. Lozano at the time of the accident is the crash report from the accident. The report listed Omega as Mr. Lozano's employer and as the vehicle's owner, and the report stated Omega's US DOT number. This third-party crash report, standing alone, does not reveal the nature of a potential employment relationship between Omega and Mr. Lozano. The report does not explain the basis of its reference to Omega, and we have been presented with nothing in the record that confirms that reference's provenance or accuracy.[18] It amounts to an *ipse dixit* and thus constitutes legally insufficient evidence.

The court of appeals determined that an employment relationship existed by approaching the matter in another way. That court observed that "Omega, as the dispatcher, had the opportunity to assign a different driver to this particular drive but instead assigned [Mr. Lozano]." 627 S.W.3d at 694. The Lozanos assert this point in their merits brief. We

---

[18] From our independent review of the record, we note that Mr. Marin also testified about a "bill of lading" that may have identified Omega as the motor carrier. In their brief's statement of the facts, the Lozanos observe that although the "packet for this trip did not include the bill of lading," Mr. Marin admitted "the bill of lading could have included Omega as the motor carrier." Yet in their argument, when they contend that Omega was Mr. Lozano's employer, the Lozanos do not rely on a "bill of lading." In any event, even assuming that such a bill exists and even if it *did* identify Omega as the motor carrier receiving goods, combining that bill with the crash report would still be insufficient to provide evidence of the far different question of whether Mr. Lozano was an Omega *employee* under any standard. Even so, no such bill has been cited to us and we have not independently found it in the record.

need not decide whether this point would be sufficient if the record supported it because the only record basis that the Lozanos cite is Mr. Marin's general testimony about Omega, which does not support the assertion at all. Mr. Marin testified that Mr. Lozano "never worked for Omega," at least not before the accident. Nowhere on the cited pages does Mr. Marin say that Omega assigned Mr. Lozano to the particular drive or, for that matter, to *any* drive. The Marins, moreover, direct us to Mr. Lozano's testimony, in which he (1) acknowledged that he was *not* working for Omega at the time of the crash and (2) struggled to explain why he was even suing Omega.

The parties have not identified any other evidence, and the evidence that we have just described is legally insufficient to establish an employment relationship under either the federal regulations' definition of "employee" or our common law, which retains the independent-contractor distinction. *See Waste Mgmt.*, 622 S.W.3d at 277 ("[The] test to determine whether a worker is an employee rather than an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the work." (quoting *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002))). Without other evidence to support any liability against Omega apart from its supposed status as Mr. Lozano's employer, we render judgment that the Lozanos take nothing against Omega. Omega, therefore, should not be part of further proceedings in the lower courts.

Second, the court of appeals erred in affirming the jury's alter ego finding as justification for piercing the corporate veil. *See Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986) (observing that "alter ego

12

is . . . one of the bases for disregarding the corporate fiction"). "Alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased *and* holding only the corporation liable would result in injustice." *Id.* (emphasis added). We confine our analysis to whether the Lozanos have satisfied the "injustice" prong and conclude that they have not.

The "injustice" prong requires more than a judge's or juror's "subjective perception of unfairness." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008). Instead, it references "the kinds of abuse . . . that the corporate structure should not shield," like "fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like." *Id.* "Such abuse is necessary before disregarding the existence of a corporation as a separate entity." *Id.* A "plaintiff must prove that he has fallen victim to a basically unfair device by which a corporate entity has been used to achieve an inequitable result." *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 375 (Tex. 1984).

The court of appeals erred because it did not address the injustice prong. Had it done so, it would have recognized that the evidence here does not satisfy that prong's standard. The Lozanos point to nothing in the record showing that the Marins abused the corporate form such that failing to pierce the corporate veil would result in "injustice" in the sense that our alter ego cases describe that concept. One relevant consideration in the tort context is whether the corporation was "reasonably capitalized in light of the nature and risk of its business." *Id.* Yet the Lozanos produced evidence at trial to demonstrate that the companies *did* have

13

the resources to protect their drivers.[19]

In short, the court of appeals and the Lozanos relied on evidence that is legally insufficient to pierce the corporate veil between either of the Marins (especially Mrs. Marin, who was not an owner) and JNM or ANCA. Further proceedings should therefore not involve alter ego considerations. This conclusion also means that Mrs. Marin should be removed as a defendant. The Lozanos allege that Mr. Marin, not Mrs. Marin, instructed Mr. Lozano to falsify the logs on the trip in question. The Lozanos point to no evidence that Mrs. Marin's own negligence caused the accident. Without alter ego liability, there is no possibility that Mrs. Marin could be held individually liable. We therefore render judgment that the Lozanos take nothing from Mrs. Marin.

The outcome on remand will implicate many other issues here, such as the preservation issues about whether the damages were excessive. It is therefore premature for this Court to opine on any other currently disputed matters. Accordingly, without hearing oral argument, we grant the petition for review, reverse the court of appeals' judgment, render judgment in part, and remand the case to the court of appeals for further proceedings consistent with this opinion. *See* TEX. R. APP. P. 59.1.

**OPINION DELIVERED:** April 19, 2024

---

[19] The fact that the companies opted out of workers' compensation does not change this result. Standing alone, an employer's choice not to participate in that system cannot compel the unrelated finding of "injustice" necessary to satisfy that prong of the alter ego analysis. *See* TEX. LAB. CODE § 406.002(a) (generally permitting employers to decide whether to obtain workers' compensation coverage).